(No. 15613.—Judgment affirmed.)
JOHN A. KELLY, Appellee, vs. CHARLES T. BROWN,
Appellant.

*Opinion filed December 19, 1923.*

1. JURISDICTION—*when jurisdiction of the person is waived—change of venue.* Jurisdiction of the subject matter cannot be waived and the question may be raised at any time, but jurisdiction of the person may be waived by making a general appearance or an appearance for any other purpose than to object to the jurisdiction, and although a defendant to an election contest expressly makes a limited appearance to object to the jurisdiction of his person, he waives such objection when he at the same time moves for a change of venue.

2. ELECTIONS—*whether ballots have been properly preserved is question of fact.* In an election contest, before the ballots can be accepted as the best evidence and allowed to overcome the election returns it must be shown they had been so preserved that they were not subject to being tampered with; and the question whether the ballots have been properly preserved is in every case one of fact to be determined by the evidence.

3. SAME—*ballot must contain initials of election judge.* In an election contest a ballot, although it is properly voted for one of the candidates, should not be counted where it is not initialed by any election judge.

4. SAME—*what is not a distinguishing mark on ballot.* A mark upon the face of a ballot which can be reasonably and consistently explained as showing the true and honest intent or purpose of the voter in casting his ballot for the candidate of his choice should not be considered or held to be a distinguishing mark which invalidates the ballot, and the fact that the voter, while properly marking his ballot for one candidate, has drawn a line through the name of the opposing candidate does not so distinguish the ballot as to destroy secrecy.

5. SAME—*what is a distinguishing mark on a ballot.* A distinguishing mark may appear upon either the face or back of a ballot, and where a ballot in an election contest contains initials upon the back, made with the same kind of pencil as was used in voting the ballot, and no showing is made as to how the marks happened to be placed upon the ballot, it must be held that the marks were apparently made with the intention of furnishing means for identifying the ballot so as to destroy its secrecy, and it cannot be counted.

Appeal from the County Court of Boone county; the Hon. Charles P. Barnes, Judge, presiding.

W. C. DeWolf, for appellant.

James M. Huff, and Charles W. Ferguson, for appellee.

Mr. Chief Justice Farmer delivered the opinion of the court:

Charles T. Brown and John A. Kelly were both candidates at the election on April 3, 1923, for supervisor of Caledonia township, Boone county. There was only one ticket voted at the election and the names of both candidates for supervisor were printed on the same ticket, the name of Kelly above the name of Brown. There was no circle on the ticket but there were squares at the left of the names of both Brown and Kelly. Below Brown's name was a dotted line with a square at the left, presumably for the purpose of enabling a voter to vote for someone whose name was not printed on the ballot. The judges of election canvassed the vote and declared the result to be that Brown and Kelly had each received 143 votes and the election a tie. The candidates cast lots and Brown won. On April 19, 1923, Kelly filed a petition in the county court to contest the election. The cause was heard and the ballots recounted May 21, 1923. The court found and decreed that Kelly had received 143 votes at said election and Brown had received 141 votes, and Kelly was declared by the decree entered to have been elected supervisor of Caledonia township by a majority of two votes of all the legal votes cast at the election. Brown prosecuted this appeal to review the decree. The parties will be referred to as appellant and appellee.

The petition to contest the election was filed in the county court April 19, 1923, and prayed that summons is-

sue, returnable to the probate term thereof, commanding appellant to appear before the court "at its next April term" and answer the petition. On the same day the petition was filed the court ordered the case set for hearing April 30 and that the clerk "issue summons to the respondent accordingly." Summons was issued returnable April 30, 1923, was served on appellant the day it was issued, and on April 30 he appeared and filed two motions. One of the motions limiting his appearance for the purpose of making it, was to quash the summons and dismiss the petition because the petition prayed for summons returnable to the probate term, commanding appellant to appear at the next April term, which the motion alleged would be April, 1924, wherefore there was a variance between the petition and the writ, and appellant asked that the summons be quashed and the petition dismissed. The same day appellant filed a motion for a change of venue from the judge of the county court of Boone county on account of the prejudice of the judge, and an order was entered by the court granting the change of venue, and the court further ordered the cause to be heard by a judge of a neighboring county; that it stand continued without date until arrangements could be made to procure the presence of another judge, both parties to have three days' notice of the next hearing. May 2 the cause was set for a hearing May 8 before Charles P. Barnes, judge of the county court of McHenry county. On the 8th day of May appellant appeared and filed objections to the jurisdiction of the court, his objections stating he appeared specially and not in any respect waiving his special appearance before made. The objections to the jurisdiction were, that if the court ever acquired jurisdiction of the proceeding it was lost by the order of April 30 continuing the cause without date to enable the judge to procure the judge of a neighboring county to hear the case. Judge Barnes overruled the objections to the jurisdiction of the court and denied appellant's motion to quash the writ and dismiss the petition. Appel-

310—21

lant was ruled to answer May 12, and on that day he answered part of the petition and demurred to part of it.

The petition, among other things, alleged appellee received 144 votes and appellant 143 votes at the election and that the judges erroneously declared each received 143 votes; that the extra vote claimed by appellee was based on the claim that the judges refused to count one ballot for him in which there was a cross in the square in front of his name and a pencil mark drawn through the name of appellant; that the judges of the election refused to count the same for appellee and rejected it as a mutilated and illegal ballot. The petition further alleged that the petitioner was informed and believed certain other ballots which he was unable to describe were illegally marked and were counted for appellant and that they should have been rejected. The petition also alleged Ralph Schaffman voted at the election; that he was not a legal voter in Caledonia township and his vote was counted for appellant; that petitioner challenged his vote, and that appellant, who was one of the judges of the election, declared he had a right to vote and insisted on his vote being sworn in, which was done and his ballot was deposited in the ballot-box and counted.

Three grounds were alleged as causes of demurrer to the parts of the petition demurred to. The first ground is not material. The second ground of demurrer was that a part of the petition specified did not allege with certainty or definiteness any particular ballots, or why or in what respect they were illegally marked, which were counted for appellant. The third ground was that the part of the petition alleging Schaffman was not a legal voter did not state any reason why he was not a legal voter and why his ballot should not be counted for appellant. The court overruled the first and second grounds of demurrer and sustained the third ground. Appellee thereupon by leave of the court amended the petition so as to allege Schaffman

was not a resident of the town of Caledonia at the time
of the election. The amendment was made by writing it
in on the face of the petition and it was not afterwards
verified by the oath of the petitioner. Appellant was there-
upon ruled to answer the petition as amended, May 16. He
answered denying the truth of the allegations of the peti-
tion, and the cause was tried May 17.

Appellant contends that as the petition, which was filed
April 19, prayed that summons issue commanding the de-
fendant to appear "at the next April term," which would
be April, 1924, and the summons was issued returnable on
April 30, 1923, the court did not acquire jurisdiction and
should have sustained his motion to quash the writ and dis-
miss the petition. Appellee insists that even if this point is
well taken it has been waived by appellant. It was held in
*Cavanaugh* v. *McConochie,* 134 Ill. 516, that the summons
must be issued and served in the manner required by the
act to regulate the practice in chancery. That act requires
summons to be returnable to the next term of the court
after its date or the next succeeding term thereof.

Appellee does not attempt to sustain the practice pursued
in this case of issuing the summons on the day of filing the
petition, returnable eleven days after it was filed, but con-
tends, as the court had jurisdiction of the subject matter
of election contests, appellant waived any irregularity in ac-
quiring jurisdiction of his person by filing a motion for a
change of venue, answering the petition and trying the cause
on its merits. The question is one of jurisdiction of the
person and not of the subject matter. The former may be
waived, but the latter cannot be and may be raised at any
time. No limited appearance is required to raise the ob-
jection that the court has no jurisdiction of the subject mat-
ter, but if a party desires to object to the jurisdiction of
his person he must limit his appearance alone to that pur-
pose, for if he appears for another purpose he waives the
objection to jurisdiction of his person. In *Mitchell* v. *Ja-*

*cobs,* 17 Ill. 235, the court held that when a party appears for any purpose whatever except to object to the process or service he waives all objections thereto, although the process may be void or there may have been no service. In that case the party objecting had previously consented to a continuance of the case and the court held that he thereby submitted himself to the jurisdiction of the court, citing *Easton* v. *Altum,* 1 Scam. 250, where the same rule was announced. In *Louisville and Nashville Railroad Co.* v. *Industrial Board,* 282 Ill. 136, the court held a special appearance must be confined to a denial of jurisdiction, and that an appearance for any other purpose than to object to the jurisdiction is general. In that case the court quoted with approval 4 Corpus Juris, 1316, that "any act by the defendant which recognizes the jurisdiction of the court amounts to a general appearance. * * * An appearance is special where it is made for the sole purpose of objecting to the jurisdiction of the court over the person of the defendant because of want of process, because of defects in the process or in the service thereof, because the process is void or illegal, or because the action was brought in the wrong county or judicial district." It cannot be doubted if appellant had on the return day of the writ filed a motion and petition for a change of venue and had filed no other motion it would have to be held a waiver of the right to object to the jurisdiction. Both the motion to quash the writ and dismiss the petition, and the petition for change of venue, were filed the same day. Both state appellant limits his appearance to the purpose of making the motion. The attempt to limit his appearance for the purpose of applying for a change of venue could not change the character of the appearance. We know of no rule which would authorize a defendant to file a petition for a change of venue without submitting himself to the jurisdiction of the court.

Appellant contends that the motion to quash the summons and dismiss the petition was filed before the petition

for a change of venue. The record of the proceeding shows the filing of the petition to contest the election, the order for summons, the summons and return, and that "thereafter, on April 30," appellant under a limited appearance filed his motion to quash the summons and dismiss the petition, "and thereafter, on said 30th day of April, 1923," appellant under a limited appearance filed his petition for change of venue on account of the prejudice of the judge. While it cannot be determined with certainty which of the motions was filed first, we will assume the motion to quash and dismiss was presented and filed by the clerk before the petition for change of venue was presented to be filed by the clerk. In our view that does not affect the question whether by filing the petition for change of venue appellant waived his right to object to the jurisdiction of the court. Both motions were filed the same day and appear to have been simultaneously made. At all events, no disposition was made of the motion to quash and dismiss before application for change of venue was made. A defendant cannot, after limiting his appearance for the purpose of specially objecting to the jurisdiction of his person, and before the court has acted on the objection, take some other step which he could not do without submitting himself to the jurisdiction of the court and subsequently rely on his objection to the jurisdiction. By entering his appearance for any purpose after objecting to the jurisdiction he waives that objection.

Appellant also contends the petition of appellee was not properly verified, and for that reason the court did not acquire jurisdiction. The affidavit of appellee to the petition states he is acquainted with its contents; that the matters stated therein to be true of his own knowledge are true in substance and in fact, and that the matters stated on information and belief are true to the best of his knowledge and belief. We have read the petition and appellant's objections to its verification, and as everything material to a decision of the case is alleged to be known to appellee except that

Schaffman was not a legal voter, we think the objection to the verification without merit. Both the petition and the verification were sufficient.

The court counted the ballots and accepted them as better evidence of who was elected than the returns made by the election officers. Appellant insists the proof of their preservation and protection was not sufficient to justify the court in treating them as the best evidence.

James Ralston, the town clerk of Caledonia township, testified he was present at the election and was one of the clerks; that the ballots, poll-list and tally-sheet were turned over to him then by the judges in sealed packages; that he took them home with him and kept them in his possession until he produced them in court. The packages containing the ballots were sealed with a peculiar seal of Caledonia township. When produced they were so sealed. Ralston did not have possession of the seal after the election. The package containing the ballots was indorsed, "Ballots voted at election April 23, 1923," and was addressed, "J. R. Ralston, Caledonia, Boone county, Illinois." Ralston testified the package was in the same condition when produced by him that it was in when delivered to him by the judges of election. The objection of appellant is, it is not shown by the testimony how or in what kind of a place the town clerk kept the ballots after he received them and before producing them in court, or that they were so kept that they could not have been tampered with. All the ballots were cast at one place, that being the only voting place in the township. The testimony of the clerk that the package containing the ballots was sealed when produced by him in court just as it was when delivered to him, and the testimony of Cunningham, one of the judges, and other testimony as to the ballots about which any question is raised, shows the ballots had not been changed but were in the same condition when counted by the court that they were in when the box was opened and they were counted by the judges. This court

has many times stated that before the ballots can be accepted as the best evidence and allowed to overcome the election returns it must be shown they had been so preserved that they were not subject to being tampered with. While the proof here might have been made more full and complete, there is nothing from which the slightest suspicion can be raised that the ballots had been tampered with at any time or place. In fact, the evidence warrants the contrary conclusion. The question whether the ballots have been properly preserved is in every case one of fact, to be determined by the evidence. (*Kreider* v. *McFerson,* 189 Ill. 605.) The court did not err in treating the ballots as the best evidence.

The result of the election as canvassed by the judges of election showed both candidates for supervisor to have received 143 votes, and there were five rejected ballots. At the hearing of the contest in the county court all the ballots were examined and considered. The court found on the re-count appellee received 143 votes and appellant received 141 votes. In the re-count of votes there were 136 votes for appellee not questioned and seven votes apparently cast for him which were objected to. There were 133 votes counted for appellant concerning which no contention exists and ten votes apparently cast for him which were objected to.

Among the seven ballots counted for appellee by the election judges and objected to on the trial was one ballot marked with a cross in the square in front of the name of appellee, but this ballot was not initialed by any election judge. The court properly refused to count it for appellee.

Among the five ballots rejected by the election officials was one ballot marked by placing a cross in the square opposite the name of Kelly and having several lines drawn horizontally through the name and square of the appellant. This ballot was counted by the court, over the objection of counsel for appellant, as a vote for appellee. The objection is that the lines drawn through appellant's name are

distinguishing marks. The proof shows there was some controversy over this ballot when it was reached by the election judges for count and finally rejected, and that appellee, who was present while the votes were being counted, insisted it was a vote for him and handled and examined the ballot. From our examination of the evidence as to what transpired at the time this particular ballot was reached we see nothing that would convince anyone that the ballot bore any markings which would necessarily destroy the secrecy of the ballot. True, there is a cross for appellee in the square, and the heavy lines through the name of appellant were absolutely unnecessary. However, from all the circumstances and an inspection of the ballot it seems to us the voter intended to vote for appellee, and the additional marks were made through appellant's name to further show that the voter was not casting his ballot for appellant. A mark upon the face of a ballot which can be reasonably and consistently explained as showing the true and honest intent or purpose of the voter in casting his ballot for the candidate of his choice should not be considered or held to be a distinguishing mark which would invalidate the ballot. (*Winn* v. *Blackman,* 229 Ill. 198; *Neal* v. *Odle,* 308 id. 469.) This vote was properly counted for appellee.

We have examined the other four rejected ballots and the remaining six ballots objected to and counted for appellee. Those four rejected were properly disposed of, and there is no merit in any objection to the remaining six ballots counted in favor of appellee. The court's final calculation of 143 votes counted in favor of appellee was correct.

Among the ten ballots counted for appellant by the election judges and objected to on the trial was one ballot indorsed by the election judges and properly marked with a cross in the square in front of appellant's name. The cross on the face of the ballot was made with an indelible lead-pencil, and upon the back of the ballot were the initials "C. T.," also in indelible lead. This ballot the trial court

refused to count for appellant for the reason that distinguishing marks appeared thereon. Such a mark may appear upon either the face or back of a ballot. No showing was made whatever as to how the marks complained of happened to be placed upon the ballot in question. Unquestionably the marks assist in no way and have nothing to do with expressing the intent of the voter in casting his ballot for such candidate as he desired. A mark apparently placed upon a ballot by a voter with the intention of furnishing means for identifying the same clearly destroys the secrecy of the ballot as contemplated by the election law. We have examined the ballot in question and in our opinion it should not have been counted.

Ralph Schaffman voted at the election after his vote had been challenged. The trial court found the evidence sufficient to warrant the conclusion that Schaffman voted for appellant and that he was not a legal voter of Caledonia township, and deprived appellant of that vote. We have considered the testimony, and it appears Schaffman, when of age, came to Caledonia township with his father's family some three or four years before the election here involved. Shortly thereafter he hired out as a farmhand and worked for different persons in that neighborhood. Most of the time during that period he made his headquarters at his father's house. In March, 1922, his father moved his family into an adjoining county, and the son, being a single man, continued to work at different places. Part of the time he worked in Caledonia township, in Belvidere township, and in Winnebago county. The proof shows he had voted in Caledonia township twice, and he testified he considered Caledonia his home from the time he came to Boone county, some three years before the election. During December, 1922, he was at his father's house in Winnebago county, which he called home, working for him for two or three weeks. He then worked for another party in Win-

nebago county, and came over from that county to work for his former employer, McEachran, in Caledonia township, on March 8, 1923. He further said his home was where he stayed; that his home was in Winnebago county before he moved over into Caledonia township on March 8, 1923. Between jobs he seemed to go back to his father's house, wherever he lived. Though there is some discrepancy in the evidence given on the point, we are of opinion Schaffman, being a single man, considered his home to be. wherever he stayed, and not having been in Caledonia township for some months, we do not believe he was entitled to vote at the township election. The proof further showed that Schaffman came to the voting place on the day of election with his employer, McEachran, who was very friendly with and a near neighbor of appellant; that appellee had told Schaffman he had no right to vote, whereupon Schaffman consulted appellant, who was also one of the judges of election, who said he did have a right to vote. At the polls appellee challenged Schaffman's right to vote, and appellant assisted him in swearing in his vote. We think from all the circumstances shown by the proof that the trial court was warranted in concluding that Schaffman cast his ballot for appellant, and that the court correctly deducted such vote from the count in favor of appellant, thereby making appellant's total 141 votes.

Appellant complains of elector Sam Moore voting at the election and claims his vote was cast for appellee. From the proof offered we think this contention has not sufficient merit to warrant a discussion of it.

The judgment is affirmed.          *Judgment affirmed.*