(No. 27565.—■)
C. E. TAYLOR, Appellee, *vs.* ELMER M. GIBBONS *et al.*—
(ELMER M. GIBBONS, Appellant.)

*Opinion filed January 18, 1944.*

JOHN R. KANE, and LLOYD H. MELTON, both of Harrisburg, for appellant.

LYNNDON M. HANCOCK, and SCERIAL THOMPSON, both of Harrisburg, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an election contest arising out of an election held on April 20, 1943, for commissioners of the city of Harrisburg. Appellee Taylor filed the contest making all candidates for the office parties. Four commissioners were to be elected. In his statement of contest Taylor alleged that by reason of certain irregularities in the conduct of the election and in the tabulation of votes in the various precincts, defendant Gibbons had been declared elected, whereas in truth and fact the plaintiff received the larger number of votes. Gibbons filed an answer denying any

irregularities and alleged that the ballots had not been properly preserved as required by law.

There were eight candidates for the four positions of commissioner. No answers were filed either by the three admittedly successful candidates or by the three admittedly defeated candidates.

Taylor, the plaintiff, on filing statement of contest also secured an order that the ballots be impounded. This was done by the circuit clerk by taking them from the city clerk's office and placing them in certain deposit boxes in a vault of the Harrisburg National Bank. There are eight voting precincts in the city and on the trial of the case the ballots from each precinct were admitted in evidence and counted. Defendant objected on the ground that the ballots had not been properly preserved and so were not competent as evidence. This constitutes the only issue in the case here.

The official canvass gave Gibbons 1937 votes and Taylor 1924. As the result of the recount Taylor was declared to have received 1933 and Gibbons 1901 votes. Taylor was therefore declared elected. No claim is here made that the method of handling the ballots prior to their having been deposited with the city clerk rendered them incompetent as evidence. The principal contention as to their incompetency as evidence rests upon the evidence of what occurred after they came into the hands of the city clerk and before they were impounded. The evidence of the judges who returned the ballots shows that no opportunity occurred for anyone to have tampered with them while in their possession. They were at all times in the custody of persons authorized to handle them.

When the bags were offered in evidence the seal on some of them had been broken. There was no attempt to show that the ballots themselves had been tampered with or taken from the string on which they had been strung by the judges. The testimony of the judges is to the effect

that when the ballots were counted they were strung. In some cases the judge testified that the ends of the strings were tied together and as to others that they were not. The ballots were placed in cloth bags having a paper top, on the flap of which mucilage had been spread. Some of the bags had been also sealed with sealing wax furnished as part of the supplies for the election. All but two of these bags of ballots were delivered to the city clerk at her office during the evening or night of the election. The bags of ballots from precincts No. 3 and No. 7 were taken to the city hall after midnight and, by a police officer, locked in a closet, and later that night, at the request of the city clerk, delivered to her at her home. She testified that her doors were thereafter locked and remained locked during the night.

Each one handling the ballots up to the time of their deposit in the city clerk's office, testified that they were delivered without change in their condition. When received on the trial of the contest it appeared that the mucilage with which the ballots from precinct No. 1 had been sealed had become loosened. On others which had been sealed with sealing wax the wax was broken. As to precinct No. 7 the bag had been opened by the election board in the presence of witnesses because the pollbooks had been inadvertently sealed in the bag. No question is raised as to the propriety of so doing.

The evidence of the contestant, as shown by the testimony of the circuit clerk and an officer of the bank in which they were impounded, was that in order to get them in the available lockboxes it was necessary to roll the bags very tightly; that an attempt was first made to get them into the boxes without rolling, which was found impossible, and they had to be tightly rolled to get them into the available space.

The trial judge, in describing the condition of some of the bags when brought into the court room, stated that

they showed that either through forcing or cramming them into the boxes in the bank or in some other way, the flap had been opened and the wax or mucilage had been loosened. The finding of the court was that the ballots were not at any time in the hands of any unauthorized person and the evidence of all those who handled them showed no reasonable opportunity for tampering with them. The bags and ballots were admitted in evidence and the ballots counted, with the result above indicated.

Appellant's counsel say that the evidence shows there was opportunity, while the ballots were in the city clerk's office, for those who desired to tamper with them, to do so, and it was therefore error to count them. The city clerk and her deputy testified that the bags containing the ballots were placed in a vault in her office; that this vault was always locked except during business hours; that at no time were both she and her deputy out of the office during business hours. She described the office and the location of the vault in a small adjacent room and testified that from the desk where she and her deputy sat the door of the vault was at all times within her view. She testified also that while there were files in the room in which the vault was located, she generally procured such files if they were wanted, and had them examined on the counter in the outer office. She also testified that no one could go into the back room without coming through a gate back of the counter in the outer office and emphatically declared there was no tampering with the ballots and no opportunity for anyone to do so. She testified that she could remember no one, other than herself and her deputy, going back into that back room while the ballots were in the vault, except on one occasion when, at her request, a ping-pong table was removed from the vault. The evidence shows no opportunity was afforded to those getting the ping-pong table to tamper with the ballots. The record in this case is barren of any evidence of tampering. The most that

appellant can claim is that there was a possibility that someone might have gone into the vault and broken open the ballots. This condition of the record, together with the evidence concerning the manner in which the bags were crushed and rolled to get them into the safety-deposit boxes, justified the court in admitting them in evidence and counting them.

The question whether ballots have been properly preserved is one of fact to be determined by the evidence before the court. (*Sibley* v. *Staiger*, 347 Ill. 288; *Patterson* v. *Johnston*, 328 Ill. 101; *Kelly* v. *Brown*, 310 Ill. 319.) On review of this record we are satisfied that the finding of the trial court that the ballots had been properly preserved is not contrary to the greater weight of the evidence, and it will not be disturbed. (*Kelly* v. *Brown*, 310 Ill. 319; *Jackson* v. *Winans*, 287 Ill. 382.) The judgment of the circuit court is affirmed.

*Judgment affirmed.*