McKEE et al. v. CHAUTAUQUA ASSEMBLY et al.

(Circuit Court, W. D. New York. July 20, 1903.)

No. 184.

**1. JURISDICTION OF FEDERAL COURTS—AMOUNT IN DISPUTE—SUIT FOR INJUNCTION.**

In a suit by a member of a nonstock corporation to restrain alleged illegal and ultra vires action by its governing body, the amount involved, for jurisdictional purposes, is the value of the rights sought to be protected; and a federal court has jurisdiction where it is shown by the bill that the mismanagement complained of, if not restrained, will result in the creation of debts, and may result in the loss of the corporation's property, which largely exceeds in value the jurisdictional amount.

**2. CORPORATIONS—STOCKHOLDER'S SUIT—AMENDMENT OF CHARTER.**

A legislature, under power reserved in the grant, may lawfully amend the charter of a corporation by enlarging its powers in harmony with the purpose of its organization, by consolidating other corporations with it and repealing their charters, and by changing the mode of electing its trustees; and a stockholder, or member where it is a nonstock corporation, cannot maintain a suit in equity, based on such legislation, or the action of the trustees in procuring and acting on the same, to restrain such action, where it is not shown that his contract or property rights are destroyed or impaired.

In Equity. On demurrer to bill.

S. Schoyer, Jr., Martin Carey, and Lyman M. Bass, for complainants.

Frank W. Stevens and John G. Milburn, for defendants.

HAZEL, District Judge. This is a suit in equity by a leaseholder of Chautauqua Institution, a nonstock corporation, originally organized as Chautauqua Assembly, pursuant to the New York statute passed April 12, 1848 (Laws 1848, p. 447, c. 319), against that corporation, now called Chautauqua Institution, the Chautauqua University, and the Chautauqua School of Theology. All of the corporations named are or were nonstock corporations, organized under the laws of the state of New York, and managed by boards of trustees. The suit is between citizens of different states, and is brought by complainant, in behalf of himself and other leaseholding members of Chautauqua Assembly, not residents of the state of New York, who are similarly situated, and who may wish to intervene or join the com-

¶ 1. Jurisdiction of circuit courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Shoe Co. v. Roper, 36 C. C. A. 459.

plainant in this suit. No person, however, has intervened. The bill of complaint seeks, first, to have judicially declared unconstitutional and void an act of the Legislature passed March, 1902 (Laws 1902, p. 496, c. 196), changing the name of Chautauqua Assembly to Chautauqua Institution, widening its scope, expanding the powers of its trustees, terminating the separate existence of Chautauqua University and the Chautauqua School of Theology, and consolidating these corporations with Chautauqua Institution, and vesting in Chautauqua Institution the property of the constituent corporations. The complainant then asks protection against alleged ultra vires acts committed by the trustees of Chautauqua Assembly or Chautauqua Institution. Demurrers and pleas in abatement to the bill have been interposed by the defendants. The Chautauqua Assembly has demurred to the bill specially on the ground of want of jurisdiction, and generally that the complainant is not entitled to the relief demanded, on the facts pleaded. Pleas of the other defendants are before the court on a motion to overrule. Argument upon the demurrers and pleas was heard at the same time.

The special demurrer to the jurisdiction, upon which stress is laid, will be first considered. The argument of counsel for demurrant proceeded upon the theory that the bill fails to disclose an amount in dispute exceeding the sum of $2,000, exclusive of interest and costs. The bill as originally filed did not allege specifically the amount involved, but an amendment to the bill, filed since the demurrer and pleas were interposed, asserts that the matter in dispute between the Chautauqua Assembly and the individual complainants exceeds in value the prescribed jurisdictional amount. It is contended, nevertheless, upon the authority of Fishbeck v. Western Union Telegraph Company, 161 U. S. 96, 16 Sup. Ct. 506, 40 L. Ed. 630, that the amended bill is not conclusive, but merely declaratory, and that the facts therein alleged, and admitted by the demurrer, establish the absence of any pecuniary value whatever in the subject-matter for which suit is brought. A brief narration of the salient averments of the bill is necessary to a better understanding of the questions in controversy. Chautauqua Assembly was organized, as heretofore stated, pursuant to the provisions of the general act of the Legislature passed in 1848, for the formation of nonstock corporations; and its object and purpose were to promote Sunday school interests at Fairpoint, in the county of Chautauqua, state of New York, and to promote the moral and religious welfare of its members. At the time of incorporation, it acquired a tract of land, subject to the leasehold interests of the members of another nonstock corporation, named the Chautauqua Lake Camp-Meeting Association. Subsequently Chautauqua Assembly acquired other lands and properties, situated at Point Chautauqua. Members of Chautauqua Assembly, by complying with its rules and by-laws, might obtain a perpetual leasehold interest in certain lots or parcels of land described in the lease. It was the custom for leaseholding members of Chautauqua Assembly to erect upon the lots cottages for temporary summer homes. Other rights and privileges were vested in the members by the rules and by-laws, among which was the right to vote for trustees annually.

In all respects the rights of the members were equal in the assets of the corporation. The objects and purposes of the Chautauqua School of Theology were to instruct its patrons in ecclesiastical, theological, philosophical, and kindred subjects. Chautauqua University was incorporated to teach the sciences, arts, languages, and literature, and its board of trustees was empowered to confer degrees. The bill sets forth that the trustees of Chautauqua Assembly for many years have arbitrarily deprived the complainant and other leaseholders of the right to vote for trustees; that such trustees perpetuated themselves in office, contrary to the by-laws, rules, and regulations of the assembly, no election having been held for many years. Numerous acts by the trustees are alleged to have been ultra vires. It is asserted that large sums of money have been expended annually in contravention of the objects of the assembly. Financial mismanagement by the trustees is charged, and generally that the original and primary purpose of Chautauqua Assembly has been departed from by the trustees, and its scope expanded, by the Legislature of the state of New York, without the assent of the corporate members, beyond the limits provided by the original charter. The bill proceeds to allege that the net income in the years 1898, 1899, and 1902 was $11,150, $6,700, and $7,500, respectively, while the liabilities for the year current, of 1902, were $80,000. To meet such liabilities and expenses incurred, owing to this illegal departure from the primary objects and purposes of the assembly, 20-year 5 per cent. interest-bearing bonds have been issued, secured by a mortgage upon the lands and assets of Chautauqua Institution, amounting to $200,000. Out of this sum $50,000 was used, without authority by the board of trustees, to purchase the capital stock of another corporation, known as the Chautauqua Press. The bill states that the business of printing and publishing has become an adjunct of the corporation, and that for the purpose of carrying out a plan of altering, modifying, substituting, and consolidating Chautauqua Assembly, under and by the name of Chautauqua Institution, with Chautauqua University and the Chautauqua School of Theology, the trustees of Chautauqua Assembly, who were also trustees of Chautauqua University and the Chautauqua School of Theology, secretly procured from the Legislature of the state of New York an act terminating the existence of the two last named corporations, and consolidating them in the manner hereinbefore stated. The demand for relief prays for discovery, that the consolidation and assumption of all debts and liabilities of Chautauqua Assembly (now Chautauqua Institution) be declared null and void, that its officers be restrained from assuming any of the debts and liabilities of either the Chautauqua School of Theology or Chautauqua University, that the records and properties be conveyed back by the trustees to the defendant corporations, that the election of trustees under the consolidation act be declared illegal, that the purchase of the capital stock of Chautauqua Press be set aside, that the issuance of bonds secured by mortgage be declared invalid, and for other relief. Such, in fact, are the salient features of the bill.

Is this court without jurisdiction because of the failure of the bill to set forth sufficient facts showing that a sum in excess of $2,000

is involved? Does the broad rule contended for by demurrant apply to the case at bar? I am quite well satisfied that the authorities cited upon the point (Elgin v. Marshall, 106 U. S. 578, 1 Sup. Ct. 484, 27 L. Ed. 249; Kurtz v. Moffitt, 115 U. S. 487, 6 Sup. Ct. 148, 29 L. Ed. 458, etc.) have no application here. It has frequently been held that the value in dispute in such an action as this is the object for which the suit is brought, and upon which issue is joined. This rule is firmly established by a line of cases. Mississippi & Missouri R. Co. v. Ward, 2 Black, 485, 17 L. Ed. 311; Sharon v. Terry (C. C.) 36 Fed. 347, 1 L. R. A. 572; Whitman v. Hubbell (C. C.) 30 Fed. 81; American Fisheries Co. v. Lennen (C. C.) 118 Fed. 872. A demand for a specific sum of money would seem to be unnecessary where the remedy sought invokes the restraining power of the court. The pecuniary amount involved depends upon the character and value of the relief which the court may deem proper to grant. The financial interest of the defendant personally, and of the corporation in whose behalf he brings this suit, in the affairs of the assembly, may be gathered from the averments of the bill. The mismanagement complained of, if unauthorized and illegal, may result in foreclosure proceedings, followed by dissolution of the corporation and forfeiture of its franchise. This is a sufficient showing that loss of property rights may be sustained, and that the corporation may be deprived of prospective financial gain. Hence the restraining power of a court of equity is properly invoked to enjoin resultant spoliation and damage, and the Circuit Court has jurisdiction of the subject-matter.

I come now to a consideration of the question presented by the general ground of demurrer: Is complainant entitled to relief from a court of adequate jurisdiction? This involves a consideration of the merits as presented by the bill. The grievances here complained of appear to be analogous to those which justify a stockholder in seeking redress because of improper acts by the board of directors of a stock corporation, where the directors wrongfully govern and control the affairs of the corporation. If the facts as shown by the bill disclose ultra vires acts by the trustees, causing the affairs of the corporation to be mismanaged, or furthering the individual interests of the trustees, this, manifestly, would be such a breach of the trust obligation as would give to the member suing in behalf of the corporation a right to invoke the aid of a court of equity. Such a proceeding would be properly commenced by a stockholder against the trustees of the corporation for which they presume to act, provided, however, the corporation expressly refused to proceed, or the directors by some overt act showed a disinclination to avail themselves of the remedy open to the corporation. Davenport v. Dows, 18 Wall. 626, 21 L. Ed. 938; Dodge v. Woolsey, 18 How. 331, 15 L. Ed. 401; Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Greenwood v. Freight Co., 105 U. S. 13, 26 L. Ed. 961; Pomeroy on Eq. Juris. vol. 3, §§ 1094–1095. Furthermore, the allegation of bad faith set forth in the bill must be tested to some extent, at least, by the legislative repeal of the charters of Chautauqua University and the Chautauqua School of Theology, by their merger by the act of con-

solidation, and by the amendment of the charter of Chautauqua Assembly. Complainant asserts broadly that, by virtue of the alleged unconstitutional legislation specifically referred to in the bill, contract rights are impaired, and his property rights invaded and destroyed. The consolidation act changes the name of Chautauqua Assembly, and enlarges its scope, without, however, depriving complainant of his rights and privileges of membership. Section 4 of the act passed March, 1902 (Laws 1902, p. 497, c. 196) expressly provides that the members of Chautauqua Institution shall be the persons named in the original and supplemental certificate of incorporation, and all persons owning one or more lots on the land of the corporation. Sections 5–7 provide for the election of 24 trustees, who are divided into Classes A and B. Annual meetings are specified. The manner of electing 20 trustees belonging to Class A, by the hold-over trustees, and 4 trustees belonging to Class B, by the members of the corporation, is provided for in the act. This right to expand and amend the charter of the Chautauqua Assembly by alteration or addition to its corporate scope cannot, in my view of this controversy, seriously be disputed. The right of reservation by the Legislature to amend and repeal corporate charters, in my opinion, is broader than is contended for by complainant. The terms employed in expressing the reserve power of the state include the right of consolidating corporations whose objects and purposes are similar. New obligations may be created; new duties may be prescribed for the trustees; investments may be made; and a stockholder cannot be heard to complain, unless such acts when done by the Legislature, impede, destroy, or impair a contract and property rights. People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684. The charter of Chautauqua Assembly was altered by inclusion and addition of privileges and features which were adapted to and supplemented those of the original charter. Such features seem to be in entire harmony with the purposes and objects which the original members had in view at the time of incorporation. The expansion of the general powers of Chautauqua Assembly by the maintenance of schools, proper facilities for recreation, maintenance of libraries and museums, and publication of books on the grounds of the corporation, has been undertaken, to more effectively carry out the original purposes and objects of the Chautauqua Assembly. These changes and developments do not, apparently, alter the pecuniary liability of complainant. His property rights are not impaired or destroyed. No contract relations or obligations are impaired or defeated. His status as a leaseholder remains undisturbed, with the right to enjoy the additional privileges of the institution. True, the manner of electing trustees to manage the affairs of the corporation is perceptibly altered; but this does not, in my opinion, operate to destroy the property rights of the minority leaseholders. The changes and amendments complained of with respect to the election of trustees were entirely within the power of the Legislature to enact. It is insisted, however, that no election of trustees has been held for many years, and that in that respect the trustees have exceeded their powers, and have perpetuated themselves in office from year to year. Such

acts of omission by the trustees, however, have been acquiesced in by the minority stockholders for many years. Furthermore, the act of consolidation and reorganization of Chautauqua Assembly, as heretofore pointed out, provides for a different mode of electing trustees. Since the passage of the act of March, 1902, an election of trustees in accordance with the charter of 1902 has been held. The regularity of such election in the manner provided by law cannot be successfully controverted, assuming the law to have been a valid enactment. It is undoubtedly the law, as contended for by the complainant, that personal and real property acquired by a corporation, together with contract rights and choses in action, cannot be destroyed or impaired by legislative interference, and hence, the rights of a shareholder of a corporation, repealed by special act of the Legislature, cannot be invaded and destroyed without adequate and complete compensation to him. Greenwood v. Freight Co., supra; People v. O'Brien, supra. Such, however, are not the facts here presented. It appears that the corporate existence of Chautauqua University and the Chautauqua School of Theology were terminated by the state, by and with the assent of their members, who were also trustees of Chautauqua Assembly. The authority of the Legislature to repeal such charters, the legislative intent reserving the power so to do being expressed in the grant, cannot be seriously disputed, when no property rights are interfered with. Without deeming it necessary to pass upon the point, I may say that it is difficult to perceive, from the allegations of the bill—no actual fraud or conspiracy being charged—how Chautauqua University and Chautauqua School of Theology can be proceeded against. In view of the foregoing, it will serve no useful purpose to discuss any other questions involved in this controversy.

From the examination given to the questions argued and the authorities cited by counsel, I conclude, first, that the ground of demurrer that the court is without jurisdiction, is not well taken; second, that the bill lacks equity, in that it does not appear that any contract or property rights are invaded or destroyed by reason of any of the acts of omission or commission charged in the bill. The court having come to this conclusion, it is unnecessary to pass upon the questions raised by the plea. The bill must be dismissed.