### HUTCHINSON BOX BOARD & PAPER CO. et al. v. VAN HORN.

(Circuit Court of Appeals, Eighth Circuit. May 21, 1924.)

No. 6369.

1. **Courts ⊙⟞328(2)—Amount in controversy in stockholder's suit held value of corporate right to be enforced, and not value of plaintiff's stock.**

In stockholder's action against his corporation and another corporation to cancel contract between the two, and for an accounting as to latter's illegal profits thereunder, brought on former's refusal to sue, the amount in controversy, for determination of whether federal court had jurisdiction because of diversity of citizenship, was the value of the corporate right sought to be enforced, and not the value of plaintiff's stock.

2. **Courts ⊙⟞317—Corporation necessary party defendant, and could not be realigned as plaintiff in stockholder's action to cancel corporation's contract with other corporation on former's refusal to sue.**

In stockholder's action against his corporation and another corporation to cancel contract between the two, and for an accounting as to illegal profits thereunder, brought on former's refusal to bring suit on a stockholder's demand, former was a necessary party defendant, and could not be realigned as party plaintiff.

3. **Courts ⊙⟞316—Stockholder's suit held not collusive, depriving federal court of jurisdiction because of diversity of citizenship.**

Stockholder's suit against his corporation and another corporation to cancel a contract between the two was not collusive, so as to deprive federal court of jurisdiction on ground of diversity of citizenship, merely because other stockholders, who were residents of same state as defendant corporation, induced plaintiff to bring suit and agree to contribute to the expense.

4. **Corporations ⊙⟞214—Corporation, awarded damages from codefendant in stockholder's suit, properly required to reimburse stockholder for attorney's fees and other expenses.**

In stockholder's suit for cancellation of his corporation's contract with another corporation, and for an accounting as to profits thereunder, brought after first corporation had on demand refused to sue, the court, in canceling contract and awarding first corporation the latter's illegal profits thereunder, properly required first corporation to pay stockholder's attorney's fees and other expenses on theory that such corporation received the benefit of attorney's services.

Symes, District Judge, dissenting.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

---

⊙⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by L. K. Van Horn against the Hutchinson Box Board & Paper Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

C. M. Williams, of Hutchinson, Kan., (D. C. Martindell, of Hutchinson, Kan., on the brief), for appellants.

F. Dumont Smith and A. C. Malloy, both of Hutchinson, Kan. (J. S. Simmons and Carr W. Taylor, both of Hutchinson, Kan., on the brief), for appellee.

Before LEWIS, Circuit Judge, and SYMES and PHILLIPS, District Judges.

PHILLIPS, District Judge. This is an action in equity, brought by L. K. Van Horn, appellee, against the Hutchinson Box Board & Paper Company, hereinafter called the Box Board Company, the Hutchinson Egg Case Filler Company, hereinafter called the Egg Case Company, and Emerson Carey, appellants, to set aside and cancel a contract entered into between the two companies, and to recover the market price of certain straw board furnished the Egg Case Company by the Box Board Company under said contract. Appellee is a stockholder in the Box Board Company and prosecutes this suit as a stockholder's suit after demand upon the Box Board Company and its officers to prosecute the same and their refusal.

In February, 1918, appellee, who was a resident of Colorado, called at the office of Mr. A. C. Malloy, an attorney of Hutchinson, Kan., for the purpose of consulting him relative to the above-mentioned contract, but failed to see Malloy, due to the latter's absence from his office. During the summer of that year appellee's brother, who lived in Hutchinson, met Malloy, told him appellee had called at Malloy's office for the purpose of consulting him, and made some inquiries concerning the matter. Malloy advised him there was some discussion among stockholders, but no definite action had been agreed upon. Appellee's brother sent this information to appellee. On October 21, 1918, appellee wrote Malloy, advising that he was the owner of 25 shares of common stock and 5 shares of preferred stock, which cost him $5,500, on which he had received no dividends, and requested Malloy to suggest a method whereby the stockholders might prosecute an action for the cancellation of the contract. Malloy advised the bringing of a stockholder's suit in the federal court. On November 18, 1918, appellee wrote Malloy, authorizing him to bring this suit in the federal court in appellee's name. About this time Malloy discovered that certain local stockholders, through their counsel, were preparing to institute suit in the state court. Malloy informed counsel for the local stockholders that he was considering the bringing of a suit in the federal court for appellee. Counsel for the local stockholders stated they preferred the suit should be brought in the federal court. Malloy informed them appellee was hesitating on account of having to advance the preliminary expenses. This resulted in negotiation between counsel and the entering into, on November 23, 1918, of a contract between appellee and certain of the local stockholders, wherein it was agreed that the appellee should bring a suit in his name in the federal

court to cancel the contract and for an accounting, that appellee would not sell or transfer his stock until the termination of the suit and would not dismiss the suit prior to its determination without the consent of the local stockholders, that the local stockholders would indemnify the appellee for any expenses incident to the bringing and prosecution of the suit, but that appellee's interest in any fund recovered should be applied to pay its pro rata share of any allowance made by the court for the expenses of suit and attorney's fees, and that the local stockholders would co-operate in the prosecution of the suit. Malloy appeared solely for appellee throughout the litigation, both in the lower court and in this court, and the attorneys for the local stockholders also joined him in the prosecution of the action. The attorneys agreed to look only to the fund recovered for their fees. Appellee appeared at the trial, testified as a witness, and was actively connected with the entire litigation.

The allegations of the bill material to this inquiry are as follows:

That the amount involved in the controversy, exclusive of interest and costs, exceeds the sum of $3,000; that appellee is a resident and citizen of the state of Colorado; and that the Box Board Company and the Egg Case Company, corporations, and Carey, are residents and citizens of the state of Kansas.

That the Box Board Company was organized in January, 1914; that Carey was made president of the company, under an agreement that he was to be the executive officer thereof and have full charge of its affairs; that since its organization Carey has been in absolute and complete control of the company, and has dictated the election of its directors and the general policy, actions, and resolutions thereof.

That in July, 1914, Carey organized the Egg Case Company, became its president, and acquired all of its capital stock, except one share each transferred to certain of his relatives to qualify them as directors; and that since the organization of that company he has been in complete and absolute control of its affairs and received all profits made by it.

That in July, 1914, Carey, by reason of his control and domination of the Box Board Company, procured its directors to adopt a resolution authorizing its president and secretary to lease to the Egg Case Company a tract of land for the term of 25 years for $1 and such other consideration as the President and secretary might consider sufficient; that on January 18, 1915, Carey as president of the Box Board Company, pretended to make a written contract by which the Box Board Company leased to the Egg Case Company the above-mentioned tract of land for a period of 25 years, in consideration of $1 and the agreement of the Egg Case Company to erect on the ground a factory for the purpose of manufacturing egg case fillers, to purchase of the Box Board Company all the straw board used by the Egg Case Company, and to pay therefor a maximum price of $21 per ton. The contract also contained a proviso to the effect that, if the Box Board Company should at any time fail to furnish the Egg Case Company an adequate supply of straw board, for other reason than the act of God, the Egg Case Company should have the right to purchase straw board

to meet its demands and charge any excess over $21 per ton paid therefor against the Box Board Company. That, pretending to act under said agreement, Carey from that date operated the Box Board Company and delivered all of its product to the Egg Case Company at the maximum price of $21 per ton, which was less than the cost of manufacture, and that during all of said period the market price of the product averaged $50 per ton and at least 30 tons per day were delivered.

That on November 15, 1918, one Adolph Krause and Isadore Smith, as stockholders of the Box Board Company, made demand upon Carey as president of that company to bring a suit against the Egg Case Company to vacate and annul said contract and to obtain an accounting for the box board delivered thereunder; that on December 9, 1918, appellee made a similar demand; that said demands were refused.

That appellee is the owner of stock of the Box Board Company of the par value of $3,000.

The bill prayed for a cancellation of the pretended contract and for an accounting by the Egg Case Company to the Box Board Company for the market value of the box board and other products delivered under the contract.

The Egg Case Company and Carey filed a motion to dismiss the bill, setting up three grounds. The second and only ground of the motion we need to consider here was "that it does not appear by the complainant's bill that the amount in controversy is such as to give this court jurisdiction." The Box Board Company filed a similar motion. These motions were overruled. Thereupon the Egg Case Company and Carey filed a joint answer, and the Box Board Company filed a separate answer, to the bill. The cause was duly tried to the court, and on March 11, 1921, the court rendered its decision in which it found that the contract, in so far as it related to the provision for the furnishing of straw board to the Egg Case Company for a period of 25 years, should be canceled and annulled, and that an accounting should be taken between the two companies as to the straw board furnished under the contract, for the purpose of determining the actual amount of money lost by the Box Board Company in complying therewith. In passing on the jurisdictional question relative to the amount in controversy the court said:

"The proofs show at the time this suit was instituted the market value of the same (referring to appellee's stock) was not so much as $3,000. However it is alleged in the bill of complaint the amount in controversy exceeds $3,000, and the proofs show complainant paid for said shares an aggregate sum of $5,500."

The court appointed Hon. Charles S. Fulton special master to take the account. On September 30, 1921, the master filed his report in which he found the unlawful profit made by the Egg Case Company under the contract, after making all allowances amounted in round numbers to $318,000, and after deducting certain payments voluntarily made by the Egg Case Company to the Box Board Company to cover losses in operation, a balance was due to the Box Board Company of $58,531.91. Thereupon the appellee filed a motion to tax the costs

and include therein appellee's actual expenses for the preparation and trial of the cause, a reasonable fee for the master, and a reasonable attorney's fee for appellee's counsel. On March 13, 1922, the court appointed C. H. Brooks as special master to ascertain the costs. The master filed his report, recommending the allowance to appellee of $1,036.36 for his necessary expenses and disbursements and the allowance of $25,000 to appellee's counsel. Exceptions were filed to the reports of both special masters. On March 12, 1923, the court entered its final decree, approved and confirmed the reports of the masters, and ordered and adjudged that the contract be canceled, that the Box Board Company pay to the attorneys of record for the appellee the sum of $25,000 as their reasonable attorney's fee for the preparation and prosecution of this action, and to Charles S. Fulton and C. H. Brooks the sums of $500 and $1,000, respectively, for their services as special masters, and that the Egg Case Company pay to the Box Board Company the sum of $58,000, the balance found to be due. From this decree the appellants appealed to this court.

[1] Appellants first contend the trial court erred in overruling the motions to dismiss, and in not dismissing the suit after it found that the market value of appellee's stock was not equal to $3,000. They predicate their argument upon the proposition that the amount in controversy is to be determined from the actual value of the stock owned by appellee. In this appellants are in error. The controversy involves the validity of the contract, the amount due the Box Board Company for box board and other products furnished thereunder, the duty of the company to prosecute a suit to cancel the contract and for an accounting for the products furnished, and the right of the appellee to prosecute such suit as plaintiff because of the refusal of the company to prosecute same. The right sought to be enforced belonged to the company, but upon its wrongful refusal to sue therefor the right to prosecute the suit inured to the appellee. The judgment had to be for the amount due the company and not merely the amount of appellee's incidental interest therein. Davenport v. Dows, 85 U. S. 626, 21 L. Ed. 938. Clearly, then, the amount in controversy is the value of the corporate right sought to be enforced and not the value of appellee's stock. Foster's Fed. Prac. (6th Ed.) vol. 1, § 16; McKee et al. v. Chautauqua Assembly et al. (C. C.) 124 Fed. 808; Larabee v. Dolley, State Bank Commissioner, et al. (C. C.) 175 Fed. 365 (reversed on other grounds 179 Fed. 461, 102 C. C. A. 607, 32 L. R. A. [N. S.] 1065). Applying the foregoing rule, both under the allegations and proof the amount in dispute exceeded $3,000.

[2] Appellants contend, however, that, if the value of the corporate right sought to be enforced and protected is to be considered, the parties must be realigned, making the corporation a party plaintiff, and, since both corporations are residents and citizens of Kansas, the jurisdiction necessarily fails. Such, however, is not the rule under the facts in this case. It must be kept in mind that the corporation, its officers, and directors were antagonistic to the appellee, and undertook to defend against the action which appellee brought for its benefit. While it is true appellee is asserting a claim which belongs to the cor-

poration, his right to do so as plaintiff is because of the corporation's wrongful failure and refusal to assert the same, and, when his right to sue and the alleged claim are resisted and defended against by the corporation, the latter is both nominally and actually a necessary party defendant and cannot be realigned as a party plaintiff. Howard v. National Telephone Co. (C. C.) 182 Fed. 215; Mills v. City of Chicago et al. (C. C.) 127 Fed. 731; Doctor v. Harrington, 196 U. S. 579, 25 Sup. Ct. 355, 49 L. Ed. 606; Venner v. Great N. R. Co., 209 U. S. 24, 28 Sup. Ct. 328, 52 L. Ed. 666; Davenport v. Dows, supra.

[3] The second contention of appellants is that the evidence shows there was collusion between appellee and certain local stockholders in the bringing of the action for the purpose of creating a case cognizable by the District Court of the United States. This contention is predicated on the contract entered into by appellee and the local stockholders. Appellants say this contract falls squarely within the decision of Cashman y. Canal Company, 118 U. S. 58, 6 Sup. Ct. 926, 30 L. Ed. 72. In the case of New Albany Waterworks v. Louisville Banking Co. (C. C. A. 7) 122 Fed. 776, 58 C. C. A. 576, in reviewing the Cashman Case the court said:

"The case of Cashman v. Amador & Sacramento Canal Co., 118 U. S. 58, 6 Sup. Ct. 926, 30 L. Ed. 72, cited in support of this objection, is plainly distinguishable. As there held, the 'dispute or controversy' was 'really and substantially' one between a county and citizens of the same state, and 'the suit was originally brought by the county of Sacramento for its own benefit,' and was carried on at its sole charge, while 'the name of Cashman was used with his consent,' as that of a mere nonresident landowner, 'because the county could not sue in its own name' in the federal court. It was the suit of the county with a party plaintiff 'collusively made,' and 'for the purpose of creating a case cognizable' by that court, and thus within the Act of March 3, 1875, 18 Stat. 470, c. 137 (U. S. Comp. St. 1901, p. 511, § 5). The utmost that may be inferred from the allegations in the present case of combination with the Indiana stockholders is that they induced the complainant to file the bill, and are contributors to the expense. Conceding this, the suit is not collusive, in the sense of either statute or rule, and is within the jurisdiction of the trial court."

See, also, Wheeler v. Denver, 229 U. S. 342, 33 Sup. Ct. 842, 57 L. Ed. 1219, and Consumers' Gas Company v. Quinby (C. C. A. 7) 137 Fed. 882, 70 C. C. A. 220.

It cannot be said in the instant case the dispute or controversy was not really and substantially between appellee and the appellants. That appellee was honestly and sincerely prosecuting the action, because of his own desire and for his benefit as a stockholder of the Box Board Company, cannot be doubted. And as said by the court in the Albany Waterworks Case, supra, the fact that local stockholders may have induced him to file the bill and contributed to the expense does not make the suit collusive. But appellants argue that appellee by this contract surrendered control of the action to the local stockholders. It appears from the record that Malloy was employed by appellee and authorized to bring this particular suit a short time before any arrangement was made with the local stockholders, and that Malloy has represented appellee alone in this litigation from its inception until now. The utmost that can be said of the contract is that appellee therein

agreed, in consideration of a contribution, on the part of certain local stockholders, to the preliminary expenses, to commence and prosecute the action in good faith for the benefit of all interested parties, and not to make a compromise of the litigation beneficial to himself and detrimental to the general interests. This in our opinion is not sufficient to make the contract collusive.

[4] Appellants' third contention is that the court erred in allowing attorney's fees. They predicate this upon the proposition that appellee is only entitled to reimbursement for attorney's fees and expenses actually paid out, and that it affirmatively appears, from the contract above referred to and the evidence of Malloy, appellee has not paid out anything on account of attorney's fees. This contention appears to us to be unsound. All of the authorities are agreed that the amount of attorney's fees recoverable in such cases are not to be measured by what the plaintiff has expended or contracted to expend, but are limited to the reasonable value of the services, and are contingent upon the success of plaintiff's action. This is true because the plaintiff has no authority to contract in behalf of the corporation for the payment of counsel fees and other expenses. The theory upon which the attorney's fees are allowed is that, if the action is successful and the corporation has been benefited, it should pay the reasonable value of the services rendered it. Under this theory the corporation which received the benefit of the attorneys' services in this case ought to pay the reasonable value thereof. Forrester v. Boston, etc., Cons. Copper, etc., Min. Co., 29 Mont. 397, 74 Pac. 1088, 76 Pac. 211; Sant v. Perronville Shingle Co., 179 Mich. 42, 146 N. W. 212; Graham v. Dubuque Specialty Machine Works, 138 Iowa, 456, 114 N. W. 619, 15 L. R. A. (N. S.) 729. There is no distinction between the allowance of attorney's fees made in this case and the allowance of attorney's fees made in the case of Colley v. Wolcott (C. C. A. 8) 187 Fed. 596, 109 C. C. A. 425.

The judgment and decree is affirmed.

SYMES, District Judge (dissenting). On this record I am of the opinion that there was collusion between appellee and certain local stockholders to make a case cognizable in the federal court. For this reason alone the judgment should be reversed.

According to the plaintiff, he wrote to Attorney Malloy in the fall of 1918 in regard to taking the case This letter is not in the record, and no letter was produced showing employment. His letter of October 21, 1918, does not indicate an intention to sue on his own account, and the one of December 1st shows that the letter of November 18th, referred to in the opinion, merely authorized the use of his name as plaintiff. His own testimony, and the letter he inclosed to Malloy from a Mr. Pinney, proves that plaintiff had previously been solicited by the other parties because he was a nonresident. On cross-examination plaintiff would not say that he ever employed Malloy, but referred to the correspondence as showing what occurred. He further stated that he did not expect to pay the latter any fee.

Mr. Malloy's testimony shows that he had been an attorney for the Straw Products Company before it was reorganized as the Hutchinson

Box Board & Paper Company, and by reason thereof was in touch with its creditors; that during a period of two years preceding the filing of this suit he had been consulted by different stockholders, who talked with him about bringing a suit to set the contract in question aside. This was long before Van Horn was interested, as he testified he knew nothing about this contract until December, 1917, or January or February, 1918. Further, Malloy says he met the plaintiff's brother, and informed him that parties had solicited him in regard to a suit; that the latter said that he was going to write to his brother, who thereafter wrote Malloy that he wished to co-operate with the other parties. Malloy replied that the other parties wished to get into the federal court, but could not. Thereafter Malloy learned that the other attorneys of record here were about to bring an action in the state court, and had even gone so far as to make a written demand on the company for adjustment—a condition precedent to a suit. After he had informed them that he had a client in Colorado with sufficient investment in the company to get into the federal court, he was taken into the case.

Malloy further says that, after six or seven stockholders had talked with him, arrangements were finally made to bring the suit in Van Horn's name in November, 1918. He then states that Van Horn, in answer to his letter, "told me that he was perfectly willing to let his name be used as plaintiff, and to proceed in the federal court, but that he didn't want to assume all the burden of possible expense * * * to help others," and that, if he was to be plaintiff, he would want the others to guarantee him against out of pocket expense, etc.; and according to Malloy, it was not until the other parties had agreed to this that the contract in question was prepared "between these stockholders, who had already taken steps towards the bringing of this suit, and desired it brought, and Van Horn, who desired the suit brought." Another witness, Mr. Simmons, of the counsel for plaintiff, related that he and Malloy and the other attorneys discussed the matter of co-operation, and that they delayed until a nonresident could be found. It is also undisputed that no one expected to pay any thing, and Malloy says no one retained him. The case was worked up by a group of attorneys, who looked solely to a possible judgment for their fees.

The written contract, pursuant to which the plaintiff allowed his name to be used as plaintiff, goes far beyond the facts in New Albany Waterworks v. Louisville Banking Co., 122 Fed. 776, 58 C. C. A. 576. It was frankly conceded in that case that there was no violation of equity rule 94 in respect to collusion, and the court said:

"The utmost that may be inferred from the allegations * * * is that they induced the complainant to file the bill, and are contributors to the expense."

The Cashman Case, 118 U. S. 58, 6 Sup. Ct. 926, 30 L. Ed. 72, has never been modified. The agreements in that and the instant case are very similar. Both contain the express provision not to compromise, dismiss, or settle the suit without consent of the other parties, and the Supreme Court held there was collusion, because Cashman gave up all control over his suit. The same court in the Wheeler Case, 229

U. S. 351, 33 Sup. Ct. 842, 57 L. Ed. 1219, distinguished the Cashman Case on this ground. The agreement and facts before us go further than any case I have read on collusion. Van Horn never agreed to bring a suit, but only "authorized the bringing of said suit in the federal court in his name," a very different thing, and agreed specifically not to sell or transfer his stock, or do any act that would affect the jurisdiction without the consent of the other parties in writing, and further exacted the condition that even his expenses of attending the trial either as a party or as a witness would be repaid.

But, conceding the case to be a close one, all doubts should be resolved in favor of the jurisdiction of the court of the state where the corporations were incorporated, carried on business, and of which all the stockholders with the exception of plaintiff, and possibly one other, were residents, and where at one time they intended to bring the suit. Otherwise, counsel fostering litigation such as this, may choose between the state and federal tribunals, regardless of the rule in the Cashman Case.