WHEELER *v.* CITY AND COUNTY OF DENVER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 473.   Argued January 7, 1913.—Decided June 10, 1913.

The fact that the plaintiff in a taxpayer's suit against a municipality was solicited to bring the suit and was indemnified against liability for costs and fees is not enough in itself in the absence of any illegal purpose to make the case collusive so as to deprive the court of jurisdiction. *Cashman* v. *Amador Canal Co.,* 118 U. S. 58, distinguished.

The motives of litigants in seeking Federal jurisdiction are immaterial. *Blair* v. *Chicago,* 201 U. S. 401.

A plaintiff is not to be charged with bad faith in bringing an action simply because after it was commenced the same issue was raised and decided adversely in an action between other parties.

THE case is here on a question of jurisdiction.

The appellants filed a bill in equity in the Circuit Court for the Eighth Circuit, District of Colorado, against the City and County of Denver and the other appellees, who constitute the Public Utilities Commission, to restrain them from paying out any moneys authorized by the provisions of an amendment to the charter of the city, and likewise to restrain them and each of them from issuing or attempting to issue $8,000,000 of bonds authorized at an election directed by the amendment to the charter of

the city. The bill also prayed an accounting of money already expended by reason of their supposed election and authority as members of the Public Utilities Commission and that they be required to reimburse the city therefor, that § 264A of the charter be declared unconstitutional and void, and all further action thereunder be forever restrained and enjoined, and all acts heretofore done and steps taken thereunder be declared wholly illegal, improper and without authority of law.

The bill alleges the requisite citizenship of the parties and the jurisdictional amount. It further alleges the following:

"Appellants Wheeler and Lusk were respectively owners of real estate in the City and County of Denver of the assessed valuation of $35,000 and $42,000 respectively. For the year preceding the filing of the suit the assessed valuation of all property within the City and County was $135,467,050. At a general city election held in May, 1910, it was claimed by the appellees that an amendment to the charter of the city was adopted, which amendment provided for the acquisition, by purchase or otherwise, by the city, of a water works system, provided a Public Utilities Commission to have charge and control of such works, named the persons who were to constitute the Commission, their terms of office, salaries, and duties, and authorized them to issue bonds to the extent of $8,000,000 for the construction or purchase of such water works system and other duties."

The bill attacks the amendment on various grounds, among which are—that it was not properly submitted to the voters of the city; that the amendment was void because it submitted to the electors divers questions in one, which, under the submission, could only be voted for as a whole; that the amendment established the office of Utilities Commission, and by the same act filled such office, and that the amendment violated the state and

Federal Constitutions; that another suit was pending in the Federal court in which the Circuit Court of Appeals for the Eighth Circuit had sustained a temporary injunction theretofore granted by the Circuit Court for the District of Colorado, and the court's order declared that the amendment violated the contractual rights of the Denver Union Water Company under a contract then existing between that company and the city, and that nevertheless the city was proceeding under the amendment, to spend the money of the tax-payers of the city. Appellants filed the bill as tax-payers of the city in behalf of themselves and all other tax-payers.

Appellees made a motion to dismiss the bill on the ground that the court had no jurisdiction of the cause in that it did not involve a dispute or controversy properly within the jurisdiction of the court and that the parties had been improperly and collusively made or joined for the purpose of attempting to create a case cognizable under the laws of the United States.

An affidavit of Edwin Van Cise, one of the Public Utilities Commission, was submitted with the motion. It averred that appellants (complainants in the bill) were respectively residents of Montana and Nevada, that appellant Lusk was formerly a resident of California and a personal friend of Mr. F. G. Moffat, of the City of Denver, a gentleman who was interested as a stockholder or bondholder, or both, or in some other capacity, in the Denver Union Water Company, and that Wheeler is a client of Edwin H. Park, solicitor for her and Lusk in this cause. On the nineteenth or twentieth of June, 1911, Moffat, by the authority or consent of the water company, sent Lusk a telegram as follows:

"Would you be willing as a non-resident taxpayer to bring suit in Federal Court to stop illegal expenditure of public moneys by Utilities Commission if protected by Water Company on expenses and all liabilities? If so,

wire me authority in your name to engage attorney and bring suit."

Lusk replied as follows:

"Please engage necessary counsel and take proper steps to protect against illegal expenditures by Utility Commission. Am owner of four lots corner Ninth and Sherman, and I object to the proposed expenditures."

It is averred on information and belief, that upon the latter telegram Moffat, or some one acting for the water company, retained Park in the name of Lusk, but really for the water company, to prepare and file the bill in this cause. It being found upon consultation, that the amount in controversy with Lusk as sole complainant was insufficient to give the court jurisdiction, it became necessary to procure another non-resident owning property in the city. Park was thereupon authorized to confer with his client Wheeler, with a view to securing her coöperation, she to be guaranteed against all expenses. Thereupon the following telegram was sent by Park to her:

"Will you permit use of your name in suit here to restrain misuse of taxes by City Officials? If so, wire me to bring such suit. I advise the bringing of the suit and will protect you against expenses." To the telegram the reply was sent, "Yes, use your judgment in the matter." The next day after the receipt of this telegram Park wrote Wheeler as follows:

"My dear Mrs. Wheeler: On yesterday I wired you for permission to bring a suit in your name against some of the city officials for misuse of taxes, and received your reply authorizing me to go ahead. I b.ought the suit and filed it on yesterday. The suit is to restrain the Water Commissioners of Denver from further expenditures looking toward the purchase of a water plant by the city of Denver. The city is already enjoined in another proceeding in which the Water Company was a party. Since that time the Water Commission has spent $31,000 to hold an

election, and about $25,000 for other purposes; and are seeking to compel the city to pay out on warrants about $20,000 more.

"The courts have already held that the amendment to the charter establishing a Water Commission for the purpose of purchasing or building a water plant is unconstitutional and void, and it is our purpose to stop the spending of any more of the people's money in that direction.

"I desire to bring suit in the Federal Court, and therefore had to get permission of a non-resident taxpayer to bring suit, which accounts for my telegraphing you for permission.

"You will not be charged with any expense or costs in the matter, either for court costs or attorney's fees; and I will see that you are absolutely protected in every way from any liability whatever. Thanking you for your permission to bring the suit in your name, I remain."

The affidavit expressed the conclusion that the parties to the bill were improperly and collusively joined for the purpose of creating a cause cognizable in the United States Circuit Court, in the interest and at the cost of the Denver Union Water Company, neither of the parties having knowledge of the joinder with the other, or of any connection of the other with the cause, and having no interest which was so imperiled as to cause them to proceed on their own motion and at their own expense.

The affidavits of Park and Moffat were filed in opposition to the motion to dismiss. Park's affidavit states the following: He is solicitor for complainants (appellants here). On June 11, 1911, the question of bringing a taxpayers' suit against the Public Utilities Commission was brought to his attention by Mr. Gerald Hughes, and he was asked if he would be willing to bring such suit for Lusk, that Moffat had received a telegram from Lusk authorizing him (Moffat) to retain counsel for him for the purpose of bringing suit in the Federal court.

Wheeler then owned property within the city and county subject to taxation for the expenditures of the Commission. Park had been her legal adviser for some time, and he suggested to Hughes the advisability of joining her in the suit so that she might receive the same protection and benefit as Lusk, provided she could be protected against costs and counsel fees. Park believed it to be for her interest to be so joined. He thereupon sent her the telegram and received the reply set out in the affidavit of Van Cise, and brought the suit for her and Lusk and all other tax-payers.

The affidavit set out the property owned by her and Lusk and that she is neither a stockholder nor a bondholder nor otherwise financially interested in the water company. It averred further as follows: It is not true that the suit was brought at the solicitation or request of the water company, but on the contrary, Park suggested the joinder of Wheeler because in his opinion, as her attorney, it was to her interest to be joined, provided she could be protected against costs and attorney's fees; he so advised her and she accepted his advice and authorized the suit. It is not true that the suit is one brought solely in the interest or for the benefit of the water company, but it is brought not only for the benefit of Wheeler and Lusk but of all other property owners, including the water company, which is a large property owner, its property being assessed for taxation at about $2,500,000, being approximately 2% of the total assessed valuation of all property within the city and county, and that, as Park was informed and believed, the water company, by reason of its large interest as a property owner and taxpayer, was willing to protect Wheeler and Lusk against costs and attorney's fees. Park denied the suits were collusive.

Moffat's affidavit is to the following effect: On June 19, 1911, he was treasurer of the water company. In May, 1911, the Circuit Court of Appeals for the Eighth Circuit,

in the case of the *New York Trust Company* v. *The City and County of Denver*, had rendered an opinion that the amendment to the charter of Denver was unconstitutional and void. The water company was a party to that suit and in a cross bill had alleged its property holdings in the city and that it paid approximately one-fiftieth of all the taxes assessed and collected in the city. Notwithstanding the opinion and decision of the court, the Utilities Commission and its members openly and publicly declared their purpose of ignoring the decision and continuing to disburse the public funds of the city; announced their intention of instituting other and independent litigation in the state courts for the purpose of raising the identical questions decided by the Circuit Court of Appeals. Many taxpayers, citizens of Colorado and of other States, complained to the officers of the water company of such illegal attempts and requested the officers of the company to take some proper and legal steps to stop such unwarranted action. These conditions were discussed between Moffat and Gerald Hughes, counsel for the company, and it being advisable that the litigation should remain in the Federal courts, free from local prejudice or influence or the attacks of local newspapers, Moffat suggested that Lusk, who had been a resident of Denver and knew the conditions surrounding the litigation, might have a sufficient interest and be willing to institute such other suits in the Federal court as might be necessary and proper to prevent further illegal expenditure of public funds affecting not only Lusk, but other taxpayers. Thereupon Moffat, with the consent and advice of Hughes, sent the telegrams set out in Van Cise's affidavit. Moffat, through Hughes, employed Park to institute the suit. Moffat informed Park that the water company would protect him in regard to expenses, but did not at that time inform him of the exchange of telegrams with Lusk. The latter's desire as a taxpayer to institute and maintain the suit is

averred, and it is denied that he is a stockholder or bond-holder of the water company or that he has further or other interest than that of a taxpayer. It is averred that the water company is interested in the litigation, and has a right not only to maintain its rights as a tax-payer, but, if it sees fit, to join in this suit as a nominal party.

An affidavit of the members of the Commission was filed in reply in which they aver that they have not, nor has either of them, at any time declared the purpose as charged against them in Moffat's affidavit, nor have they done anything which might be construed as a violation of the injunction of the Circuit Court. The cause referred to by Moffat, as they have been advised and believe, involves the same questions as the present controversy, and in the event that they shall be compelled to answer they will so set up and aver. After the decision of the Circuit Court of Appeals was announced, they consulted with their counsel as to whether drawing warrants for their salaries and the expenses of the litigation could be construed as a violation of the injunction of the Circuit Court in any particular, and only issued warrants upon the assurance of counsel that they were not prohibited from doing so. They also readily acquiesced in the action of the Auditor and Treasurer of the city in requesting an opinion of the City Attorney as to their official status, after which they issued three certificates with a view of testing their right and authority so to do in the state courts, and in so doing were advised that they were not in any manner transgressing the mandate of the court. They aver their intention of bringing suits in the discharge of their duties with a view of recovering certain money believed to be due from certain collectors of water rent and such kindred matters as may arise from time to time, but not for the purpose of raising any question already raised or decided.

*Mr. Edwin H. Park* for appellants.

*Mr. W. H. Bryant,* with whom *Mr. William P. Malburn* and *Mr. Thos. R. Woodrow* were on the brief, for appellees.

Mr. Justice McKenna, after stating the case as above, delivered the opinion of the court.

The merits of the controversy are not involved. The sole question is whether there was collusion to give the court jurisdiction of the cause, and, of course, the existence of collusion implies the existence of fraud. Is fraud shown? Between the parties there is the requisite diversity of citizenship, requisite amount and the complainants (appellants here) had such relation to the matters charged as to give them a standing to litigate their legality. They were solicited to bring the suit, however, and they were indemnified against liability for cost and counsel fees. Was this enough to make their proceeding collusive? To answer the question we must keep in mind the situation. The Utilities Commission was alleged to be an unconstitutional body and its expenditures illegal. Indeed this had been decided, but injury from its action still impended or was believed to impend. Litigation was threatened or believed to be threatened in the state courts; in other words, there was a purpose to change the forum of the litigation and possibly its results. The belief may have been unfounded; it cannot be said that it was not honestly entertained. Against these circumstances what is opposed? It is said that the water company was the party who desired the suit to be brought and that the suit was brought for its benefit and at its instance and request, and upon an express contract to pay the costs of litigation and counsel fees which might be incurred. A great deal of this is assumption, the water company admits

its interest, but the appellants also have interest; but mere unity of interest or difference in its degrees is not enough, there must be an illegal purpose. If the interest was real and the peril which threatened was real or thought to be real, unity of interest or contribution of expenses cannot be regarded as necessarily proof of collusion. *Chicago* v. *Mills*, 204 U. S. 321. And the cases are numerous in which it has been decided that the motives of litigants in seeking Federal jurisdiction are immaterial. *Blair* v. *Chicago*, 201 U. S. 400, and cases cited.

*Cashman* v. *Amador &c. Canal Co.*, 118 U. S. 58, is relied on. The case is distinguishable from the case at bar. Cashman was an alien and brought suit against the Canal Company claiming that his land was injured by the debris thrown on it by the working of certain mines by hydraulic process. The suit was instituted at the instance of the County of Sacramento, the County not being able to bring suit in the Federal court. There was a cause of action in Cashman; there was a disability on the part of the county to sue in the Federal court in its own name. So far there is resemblance to the case at bar, but there are material differences between the agreement in that case and the agreement between the parties in this. The County was to pay the expenses, engage counsel and indemnify Cashman against all charges and expenses, and he stipulated "not to compromise, dismiss, or settle the said suit without the consent of the County of Sacramento, and to allow said County and the attorneys aforesaid in its behalf to manage and conduct the said suit to the same extent and in the same manner as if such suit had been commenced by and was prosecuted in the name of the said County of Sacramento." It is manifest, as this court said, from the very beginning the suit was in reality the suit of the County, with a party plaintiff "collusively made" for the purpose of creating a case cognizable "by the Circuit Court of the United

States." In other words, as was said, the "dispute and controversy" which was "involved" was nominally between Cashman, an alien, and the defendants, citizens of California, but was "really and substantially" between one of the counties of California and citizens of that State, and thus not "properly within the jurisdiction" of the Circuit Court.

The case at bar has no such features. It is not under the control of the water company. It was brought by appellants, they having a justiciable controversy, well or ill-founded, and which it was desired to be determined in a Federal court, they being non-residents of Colorado and citizens of other States.

It is true by the decision of this court in *The City and County of Denver et al.* v. *The New York Trust Company et al.*, and *Same* v. *The Denver Union Water Company et al.*, *ante*, p. 123, the merits of the controversy have been decided against them, but they must be judged as of the time their suit was begun, and, so judged, we think the suit was not collusively brought and should not have been dismissed for want of jurisdiction. The decree dismissing it is, therefore,

*Reversed.*

MR. JUSTICE DAY dissents.