## BENEDICT v. SEIBERLING et al.

(District Court, N. D. Ohio. W. D. January 5, 1927.)

No. 702.

1. **Appearance ⬉⟶10—Any act following special appearance to object to jurisdiction of court, recognizing jurisdiction, constitutes "general appearance."**

Any action of defendant, which recognizes case as in court, except to object to jurisdiction over his person, constitutes "general appearance," and such an act, following special appearance, waives claimed lack of jurisdiction of the person.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Appearance.]

2. **Appearance ⬉⟶10—Defendant, applying for change of venue or of judge, after appearing specially, waives lack of jurisdiction.**

Defendant, appearing specially to object to jurisdiction of court, waives claimed lack of jurisdiction by applying for change of venue or of presiding judge, since statute permits parties to recuse a judge.

3. **Courts ⬉⟶37(2)—Court should at any time consider proper charge that its jurisdiction has been improperly invoked.**

Court should at any time during course of proceedings consider proper charge that its jurisdiction has been fraudulently or collusively invoked.

4. **Abatement and revival ⬉⟶3—Challenge to court's jurisdiction by motion to quash summons is subject to same attack as if question were raised in answer.**

Though no special form of pleading is necessary to challenge court's jurisdiction as being fraudulently invoked, a specific and clear issue of fact must be raised, however informally, and motion to quash service of summons on ground that jurisdiction was collusively invoked is subject to same attack respecting sufficiency as if question were raised in answer.

5. **Courts ⬉⟶280(10)—Motions to quash service of summons challenging federal court's jurisdiction as fraudulently invoked and to subpœna witnesses held deficient in fact statement.**

Motions to quash service of summons on ground that federal court's jurisdiction was collusively and fraudulently invoked, and to subpœna plaintiff and witnesses in support of such motion, verified on information and belief, not stating definite facts, but based on alleged suspicious circumstances and conclusions and allegations in disjunctive, *held* insufficient in fact statement and will be denied.

6. **Witnesses ⬉⟶9—Motion to subpœna witnesses from great distances to support challenge to court's jurisdiction as fraudulently invoked should show that witnesses' testimony will be material (Rev. St. § 876, as amended by Act Cong. Sept. 19, 1922 [Comp. St. § 1487]).**

Under Rev. St. § 876, as amended by Act Cong. Sept. 19, 1922 (Comp. St. § 1487), mo-

tion to subpœna witnesses, including plaintiff, residing over 600 miles away, to testify on motion to quash service of summons on ground that federal court's jurisdiction was fraudulently and collusively invoked, should not be granted unless moving defendant shows with reasonable clarity that witnesses will testify to material facts.

**7. Witnesses ⬤⟹8—Motion to subpœna witnesses to equip defendant with inquisitorial power in exploring for facts whose existence is merely suspected will be denied.**

Defendant's motion to subpœna witnesses, including plaintiff, to testify on motion to quash service of summons on ground that federal court's jurisdiction was fraudulently and collusively invoked, will be denied, where it is mere attempt to equip defendant with inquisitorial power to explore for facts whose existence is merely suspected.

**8. Courts ⬤⟹312(1)—Plaintiff's right to sue in federal court is unaffected by manner of acquiring absolute interest sued on.**

Plaintiff's right to sue in federal court is not affected by manner of acquiring interest sued on, if it has become absolute, although acquired for express purpose of qualifying federal action or without consideration from third parties unable to sue themselves, but who hope for some profit from proposed action.

**9. Courts ⬤⟹316—Community of interest between plaintiff and certain defendants necessary to federal court's jurisdiction does not show fraudulent collusion.**

Community of interest in outcome of litigation between plaintiff and certain defendants who are necessary to federal court's jurisdiction, and community of professional representation between plaintiff and cross-petitioning or answering defendants, does not show fraudulent collusion, even if expenses of suit are contributed by defendants who themselves were unable to sue in federal court.

**10. Courts ⬤⟹316—Fraudulent collusion does not necessarily exist because plaintiff's justiciable interest was created and action incited thereon by a defendant.**

Fraudulent collusion does not necessarily exist because plaintiff's justiciable interest was manipulated into existence and action thereon was incited by a defendant or parties interested in plaintiff's success, if right to sue actually existed at time of suit, even if action was arranged by parties between whom justiciable controversy existed.

**11. Courts ⬤⟹316—Joinder of plaintiff and certain defendants in representation of justiciable facts does not show fraudulent collusion.**

Joinder between plaintiff and certain defendants in representations of justiciable facts, even to concurrence in relief based thereon, is not suggestive of fraudulent collusion in invoking federal court's jurisdiction.

In Equity. Suit by K. G. Benedict against F. A. Seiberling and others. On amended motion for leave to subpœna wit-

nesses in support of an amended motion to quash service of summons. Motions denied.

See, also, 17 F.(2d) 831.

Tracy, Chapman & Welles, of Toledo, Ohio, for the plaintiff.

Squire, Sanders & Dempsey, Thompson, Hine & Flory and Griswold, Green, Palmer & Hadden, all of Cleveland, Ohio, Mather, Nesbitt & Willkie, of Akron, Ohio, and Fraser, Hiett, Wall & Effler, of Toledo, Ohio, for defendants F. A. Seiberling, Robinson, Manton, and Francis Seiberling.

Brown, Hahn & Sanger, of Toledo, Ohio, for defendants McMahon, Fowler, Miller and Schaffner.

Geddes, Schmettau, Williams, Eversman & Morgan, of Toledo, Ohio, for defendants Jones and Erwin.

Doyle & Lewis, of Toledo, Ohio, for defendant Wilmer.

Tolles, Hogsett & Ginn, of Cleveland, Ohio, for defendant Union Trust Co.

Cotton & Franklin, of New York City, and Waters, Andress, Southworth, Wise & Maxon, of Akron, Ohio, for Goodyear Tire & Rubber Co.

KILLITS, District Judge. The motion immediately before us is entitled, "Amendment to Motion for Leave to Subpœna Witnesses." It is supported by another entitled "Amendment to Motion to Quash Service of Summons." In the body of neither is there any statement that requires the court to consider the previous motions, which were orally denied for reasons appearing upon the face thereof. The original motion for leave to subpœna witnesses asked also for subpœnas duces tecum against four persons. In Hale v. Henkel, 201 U. S. 43, 77, 26 S. Ct. 370, 50 L. Ed. 652, we orally held that the specifications as to what was required under a subpœna duces tecum were in each instance altogether too broad, and that the demand amounted to an invasion of the constitutional rights of the alleged witnesses. The impression that we get from the present record is that, notwithstanding their titles, we should treat the motions as amended pleadings, and that the moving defendants are not now asking for subpœnas duces tecum; otherwise as to the four witnesses from whom papers were originally sought we must adhere to our former ruling. It is quite plain that the motion for leave to subpœna must be considered in connection with the motion to quash service under which the former finds its place on our records.

Treated only as motions to relieve the

four moving defendants from the effects of service, the record is such that they cannot be recognized, for the reason that an effective appearance of at least one of these defendants, and we think with him the remaining three who are so closely associated with him, has been made in this case by reason of the facts attending the filing of an affidavit, subsequently amended, for a change of judge upon our alleged personal bias and prejudice, concerning the adequacy of which a memorandum striking off the affidavits has been filed.

This case was begun by the filing of the bill December 10, 1926. December 15, two members of the firm of Squire, Sanders & Dempsey, one member each of the firms of Mather, Nesbitt & Willkie, Thompson, Hine & Flory, Griswold, Green, Parker & Hadden, and Fraser, Hiett, Wall & Effler, appeared, without invitation, in our chambers and requested our withdrawal as presiding judge in this case, a position which we occupied by reason of the regular division of duties between the judges of this district. This request set up in general the same reasons which we found inadequate in the subsequent formal affidavit. With the exception of one fact, which on reflection these counsel voluntarily abandoned as ineffective by itself or in attempted connection with anything else, the only difference between the alleged reasons and facts which, in view of counsel, justified the oral request, and those more formally stated in the affidavit in question, was in respect to amplification in the latter. At the time of our interview with counsel in question, no proceedings in the case had been attempted by the defendants in whose behalf counsel then appeared. It was made quite plain to us then that the oral request was proferred for and in the interest of each of the four defendants, who are now moving before us; and it is apparent, not only in the record made in the bill, but in various proceedings since had that the interests of these moving defendants in this action are both identical and communal.

Having declined to withdraw from the case upon this oral request, on the 18th of December, at 10:45 in the forenoon, the four moving defendants filed their original "Motion to Quash Service of Summons," in which it was made plain that they severally appeared specially to present the question of jurisdiction on the alleged ground that this cause had been collusively instituted and jurisdiction in the case here had been fraudulently brought about. Two minutes later, one of the four defendants so moving, and

of the four in whose behalf we were orally requested to withdraw, filed an affidavit of alleged disqualification, in which were attempted to be set up in detail the grounds supporting their theory of fraudulent collusiveness procuring this action, and certain facts supposed to support the charge of our disqualification. This affidavit was subsequently stricken from the files, both for insufficiency in statement of alleged reasons, and because no such certificate of good faith as required by law had been indorsed thereon. Subsequently we permitted the affidavit to be refiled, with a proper indorsement of counsel. Otherwise the two were identical. Whereupon the second or amended affidavit was stricken from the files for the first reason assigned in the action respecting the original.

Upon this situation, and considering the identical and communal interest of the four moving defendants and the fact that the attempted affidavits and motions covered[1] the same situations respecting the alleged want of jurisdiction, we feel that we should consider that the two affidavits, although verified by one defendant only, were, in fact, in the joint behalf of all four.

[1, 2] The general rule is that any action on the part of a defendant, which recognizes the case as in court, except to object to the jurisdiction over his person, will constitute a general appearance, and that, if such act follows an attempt at special appearance only, waiver occurs of the claim of lack of jurisdiction of the person. 4 Corpus Juris, p. 1316, § 3, page 1333, § 27, page 1339, § 32. This has been applied, according to the notes in Corpus Juris (loc. cit.) to applications for change of venue or change of presiding judge and there is no contrariety of authority; wherefore we need cite none but leading cases.

In Kelly v. Brown, 310 Ill. 319, 141 N. E. 743, the steps taken were precisely similar to those in the instant case. The defendant first moved specially, objecting to the jurisdiction of his person. Subsequently, as here, he filed an affidavit with an application for a change of venue and another judge, in which, first, as in the instant case, disclaiming any intention to enter a general appearance, he charged the presiding judge with personal bias and prejudice. The Supreme Court of Illinois, in line with the doctrine above stated, held that by so doing he appeared generally in the case. The same holding was had in State ex rel. Engle v. Hilgendorf, 136 Wis. 21, 116 N. W. 848, by the Supreme Court of Wisconsin. Our statute

permits a party, only, to recuse a judge. One who assumes the rights of a party admits the effectiveness of the act which gives him that status. He thereby recognizes that an action is pending which involves him and in which he can have the relief asked only by appearing as a party thereto. We must hold therefore that each of these four defendants has entered a voluntary appearance in this case upon this state of facts.

[3] This, however, does not exhaust the court's duties in consideration of the motions in question, for we should at any time consider a proper charge that our jurisdiction has been fraudulently invoked; and the moving defendants exercised a plain duty, which not only they owed to themselves but to the court, in attempting to bring the question to our attention at the threshold of the proceedings herein. We are not concerned, following the Supreme Court in Gilbert, Adm'r, v. David, 235 U. S. 561, 35 S. Ct. 164, 59 L. Ed. 360, with formalities in the manner of challenging the court's jurisdiction, and we would be remiss if we did not take up the motions before us in the consideration that they were of the nature of special pleas in bar upon this subject.

[4] At the threshold of that consideration, however, appears the question of sufficiency, which was decided adversely to the same movants when the original motions on the subject were denied. As we said then orally, we should say again, that, however informally or by whatever form the question is raised, there must be developed in the raising a specific and clear issue of fact. In Barry v. Edmunds, 116 U. S. 550, 559, 6 S. Ct. 501, 29 L. Ed. 729, it was held that, upon the creation of such an issue, the court cannot dismiss unless upon facts appearing on the record which "create a legal certainty of the conclusion based on them." Deputron v. Young, 134 U. S. 241, 10 S. Ct. 539, 33 L. Ed. 923. In Hartog v. Memory, 116 U. S. 588, 590, 591, 6 S. Ct. 521, 522 (29 L. Ed. 725), the Supreme Court, speaking of the form of the issue, and passing upon the Act of 1875 (section 37, Judicial Code [Comp. St. § 1019]), said:

"Neither party has the right, however, without pleading at the proper time and in the proper way, to introduce evidence, the only purpose of which is to make out a case for dismissal. * * * The evidence must be directed to the issues, and it is only when facts material to the issues show there is no jurisdiction that the court can dismiss the case upon the motion of either party."

We take this to mean that, while no special pleading is necessary if the facts may be shown upon issues already joined, still an issue must be raised. Then considering that an issue may be raised as a result of the pleadings and the developments of the testimony, the court says:

"No doubt, if, from any source, the court is led to suspect that its jurisdiction has been imposed upon by the collusion of the parties or in any other way, it may at once of its own motion cause the necessary inquiry to be made, either by having the proper issue joined and tried, or by some other appropriate form of proceeding, and act as justice may require for its own protection against fraud or imposition."

In Wetmore v. Rymer, 169 U. S. 115, 120, 18 S. Ct. 293, 295 (42 L. Ed. 682), after following the case cited above to the point that a suit cannot be dismissed for want of jurisdiction unless the facts, when made to appear on record, "create a legal certainty of that conclusion," the court observes:

"And our present problem is to preserve as well the power of the trial court to make such inquiries as the right of suitors, so expressly reserved to them in the statutes, to have the action of the lower court reviewed," etc.

This language demands of this court that it consider the motions before us (we include both of them because of the dependence of the motion for subpœnas upon the motion to quash treated as a special plea to the jurisdiction) as we would consider any pleading which attempted to raise an issue of fact. Under the practice, the moving defendants, notwithstanding their appearance is here for all proper purposes of the case, may raise the same question of fraudulent collusiveness as one of the elements of their several answers. It cannot be doubted, therefore, that the motions are subject, as to their sufficiency as pleadings, to the same attack as if their questions were raised, in the same manner of allegation, in an answer. The motions have been elaborately argued, and are attacked and objected to by the plaintiff for insufficiency to raise the issue of fact.

[5] Considering the motions in light of the foregoing, we are bound to conclude that the manner of pleading is open to grave objections which demand their denial. They are verified upon information and belief only, which, of course, we do not consider to be of itself a controlling objection. What is attempted to be alleged under such verification, however, is but a reiteration of elaborate statements of supposed facts made to us in an extensive oral argument by counsel

for the moving defendants, upon the original motions, and brought out in an effort by the court to ascertain just what actually was known, by anybody in behalf of moving defendants, of the existence of an executed plan to bring to us a case which we should not entertain. In that argument it appeared very clearly that no definite information of any concrete alleged fact had come to counsel now supporting the motion which tended in any way to establish a conclusion of fraudulent collusion in an attempt to establish a jurisdiction of this case here. All that counsel knew was that plaintiff's ownership of stock in the Goodyear Company had not been noted with the transfer agent until the day before this case was commenced; that no vacancy had been formally declared among the prior preference voting trustees, which was filled by the selection of defendant McMahon, until December 9; and that no information had come to the depositary of the common stock in the voting trust that common stock voting trustee Erwin had given his proxy to defendant Jones before the commencement of this action. Otherwise statements were made to the court which were tantamount to admissions that other allegations of fact, which have been carried into these motions, were supported only by the suspicions and inferences of counsel from the presence of several situations, none of which was in itself significant. We may refer to a few as illustrations, in addition to the three already stated. Our attention was called to what counsel thought was a very suspicious circumstance, namely, that the printed bill bore no printer's imprint; also that plaintiff's stockholding was so small (there is nothing yet in the record showing the value, but orally we are assured that her stock is worth less than $3,000) that it was not reasonable that she was bearing expenses incident to this litigation; that so little time elapsed between the formal selection of McMahon as prior preference voting trustee and the filing of the bill as to preclude the possibility of its preparation and printing in that interval, from which it is inferred secret counsel have been at work who are suspected to have been Cotton & Franklin; that plaintiff is a sister of one of the vice presidents of the Union Trust Company, in this case as stake-holding depositary only, although Sherwin is chairman of its board, and that plaintiff's husband is socially intimate with the persons asserted, in disjunctive allegations, to have, some of them, developed the alleged "plan" to corruptly invoke our jurisdiction. Other circumstances which help to arouse suspicion with defendants and their counsel are stated in the motion, where business and social connections of parties therein named are stated.

The motions before us represent the conclusions orally urged upon us from the premises alluded to in extended argument from four counsel for defendants. From all this, and considering the protracted effort of the court to extract from defendants' counsel all the facts known and supposed to bear upon the subject, we are not only justified to, but we should, conclude that the verifying movant, who makes his allegations only as his belief upon information, neither knows nor is informed beyond the advices of his counsel. This conclusion is important in considering what would be a rightful exercise of discretion respecting the motions.

While these and recited matters may be enough to excite definite suspicion among partisans, it is equally true that reassuring inferences are also reasonable, perhaps more so. As instances, it is not unreasonable that plaintiff be helped in the expenses of her litigation by others who have a direct and legitimate interest in her success; transfer entry of the change of stock ownership does not necessarily establish the date of acquiring an ownership interest, which may have taken place a long time prior to presentation of the assignment to the transfer agent; McMahon and Jones are in the case in their respective fiduciary capacities, wherefore any proper expense made by them is not personal, but that of their trusts respectively.

[6] The motions seek the attendance upon this court as witnesses, in the hearing of this special issue, of seven persons, including the plaintiff, who reside more than 600 miles from the city of Toledo. While of course under the Code (section 1239, Barnes, Amendment of 1922 [Comp. St. § 1487]) the court could put these several witnesses to this great personal inconvenience, yet it is manifest that neither in its own interest nor with any decent regard for their rights or those of the plaintiff and her counsel should it do so unless it appears with reasonable clarity that they may be brought to testify to facts material to the alleged issue; and that should appear upon the moving papers.

Because the motion for leave to subpœna alleges amplifications of the generalities of the motion to quash, under which it is made, and that it travels over the same territory, and because both motions exhibit the same infirmities of proper pleading of facts, it is convenient as well as fair to the moving de-

fendants to consider the allegations of the subordinate motion. It is alleged therein that each of the witnesses is adverse and hostile to the defendants, and that the latter, therefore, "are unable to more definitely state what each of said persons will testify to, but represent that said witnesses, if examined in this court, will prove or tend to prove all of the facts hereinafter alleged." We have for convenience numbered the following paragraphs of allegation in the motion, and, as they are fully quoted in the statements of facts, we will refer to them seriatim by such numbering without extensive quotation.

It is alleged, first, that for five years past, as well as at present, the defendant Goodyear Company has been controlled by Dillon and a joint-stock association known as Dillon, Read & Co., and by Sherwin, chairman of the board of directors of the defendant Union Trust Company, and that during this period a majority of the board of directors of the Goodyear Company has been selected and controlled by Dillon and the joint-stock association and by Sherwin. Of course, such allegation is a mere conclusion. It may, however, in fairness, be said to be supported by facts averred in the bill of complaint and carried in the exhibits thereto to this extent; that, under the plan of operation of the company during this period, a majority of the board of directors thereof is selected by the holders of the management stock of the company, two of the only three holders whereof are Dillon and Sherwin. The bill also alleges that the moving defendants hold their positions with the company, and acquire power attributed to them, and are clothed with the capacities which bring them, in the view of plaintiff, into this court to the issues attempted by the bill, by virtue of the same plan of organization out of which grew the management stock control, wherefore, the mere fact that such power of domination and control became vested and is exercised by Dillon and Sherwin standing by itself means nothing, while, as introductory to a statement of controlling facts, if any, it may be material and here should be so considered. In the following paragraphs of the motion, however, are found those features which expose the pleading to successful attack.

In 2 it is alleged that the action was the fruit of a plan to which the Goodyear Company was a party, and also that "Clarence Dillon, Dillon, Read & Co., and John Sherwin *or* their attorneys and agents were parties." Here and elsewhere the underscoring of the word "or" is ours. In this quoted

sentence is found the first of a series of peculiar alternatives the use of which is decidedly novel in an effort to raise an issue upon pleadings. We may regard the inclusion here of the Goodyear Company defendant as mere surplusage, for it is brought into this charge only as it may be an agency, if it is here at all, for the alleged machinations of the principals named in the first paragraph as completely dominating it, viz. Dillon and Sherwin. It means nothing to the court, under the circumstances, that its name is continually repeated as one of the parties to the alleged collusive plan. It could not be a party as a corporation to such a plan, and, by the revelations of the motion itself, it could be only the instrument, unlawfully used, through which the flesh and blood alleged conspirators act. The paragraph continues by naming a law firm as counsel for Dillon and his association and the regularly retained counsel for the Goodyear Company representing the company in this proceeding; that it is composed of many members and employees; that "members of said firm, *or* employees of said firm, *or* other agents" of the Goodyear Company, Dillon, Dillon's association, "*or* John Sherwin, procured and induced K. C. Benedict to become plaintiff herein, and participated in *or* assisted in the preparation" of this case including the drawing of the bill.

The third paragraph brings in Davidson and Horner, alleging that up to and for a long time before December 9 they were residents of New York, Davidson being president of a certain trust company, and Horner a member of Dillon's joint-stock association; that Davidson's trust company is a banking corporation wherein Dillon is a very influential stockholder and trustee; and that these parties a few days before December 10 "were induced by Clarence Dillon, *or* Cotton & Franklin (the law firm in question), *or* their agents and representatives," to resign as trustees of the prior preference voting trust, that residents and citizens of New York might be eliminated therefrom, and with the purpose that as a successor there could be selected McMahon, because the latter resided within the jurisdiction of this court.

Paragraph 4 alleges that one Hoover who verified the bill of complaint positively, "did so at the request of Cotton & Franklin, *or* their representative"; that the plaintiff never owned any common stock in the Goodyear Company before December 9, when "she acquired the legal title to voting trust certificates representing 100 shares of common stock"; that moving defendants believe,

if permitted to examine here, it will develop "*either* that she is not the actual owner of said stock, *or* that she acquired same under an arrangement indemnifying her against loss *or* pursuant to the terms of which she could, at some future date, sell the said stock" to Dillon, Dillon's joint-stock associate, "*or* Cotton & Franklin, *or* their agents."

A further allegation is to the effect that, in the belief of the moving defendants, examination of the plaintiff would establish that she is not paying the expenses of the litigation "*or* that she is being indemnified against expenses," and that she is not employing the counsel appearing upon the record in her behalf, and that the expenses of this litigation, including counsel fees, are being paid by the Goodyear Company "*or* Clarence Dillon, *or* Dillon, Read & Company, *or* Cotton & Franklin, *or* the representatives of said company or said persons."

The fifth and last paragraph alleges that, when Erwin gave his proxy as a member of the common stock voting trustees to defendant Jones, it was at the request of the Goodyear Company, "*or* Clarence Dillon, *or* Dillon, Read & Company, *or* Cotton & Franklin, *or* some agent of the Goodyear Company, *or* Clarence Dillon, *or* Dillon, Read & Company, *or* Cotton & Franklin"; that Erwin gave the proxy as a part of the said plan to the end that there could be within our jurisdiction a person to be named as defendant herein, and that neither the person named, the defendant Jones, nor the defendant McMahon, is personally paying the expenses of this litigation and never have, "*or* they are doing so pursuant to an arrangement whereby they are to be reimbursed therefor and the said expenses are being paid, *or* the arrangement for reimbursement has been made by the Goodyear Company, *or* Clarence Dillon, *or* Dillon, Read & Co., *or* Cotton & Franklin, *or* some agent *or* representative of said company *or* said persons."

We have quoted in the foregoing all of the instances of the very extensive use of the word "or" in this motion, and otherwise have stated the substance of its allegations. It is beyond dispute, from the language of the motion itself, that neither of the moving defendants nor any of their counsel has any definite idea, either of what any witness sought by this subpœna will testify to upon the controlling matters alleged to indicate fraudulent collusion, or from whom any testimony of any kind may be had. All this pleading means is that clients' counsel have a suspicion that malevolent influences have conspired to oppress them with an action and in a plan which involved the creation of an impossible jurisdiction here, without knowing from whence, within a limited range of persons, testimony to justify their suspicious conclusions may be had. A pleading of this character, if it should find itself in the orderly sequence of the establishment of an issue to be judicially heard, as a petition, answer, or reply, would be quickly stricken from the files, upon objection made for its multifariousness, diffusiveness, and obscurity. We see no reason why this pleading has any immunities which would justify its continuance upon our files, further than to advise the court of the possibility that its jurisdiction has been fraudulently invoked.

[7] We do not recall in experience or in the books a plainer attempt to invoke the court's authority to equip a party with inquisitorial power to be exercised in an exploration for facts whose existence is suspected only. We cannot permit such invasion of private rights, nor burden plaintiff with the expense incidental to her necessary attendance upon defendants' experimenting, nor add to the work of this court that which supervising such an inquiry would entail.

Whether the court should, upon defendants' revelations, enter now into an inquiry, sua sponte, it is advisable to note four very significant absences of averment which would be quite important in fully informing this court, were they made:

(1) It is not asserted that any testimony is expected that plaintiff's title to her stock was merely colorable; that she is not in fact a free agent to use it for whatever purpose she desires, and to exercise respecting it the powers of full ownership free from the control of others. To say that she has the legal title thereto, but that in the use of it she is promised immunity from expense and given the privilege to sell it back again to any person is not enough.

(2) It does not assert that McMahon was not regularly selected and is not now duly qualified for all purposes as a prior preference voting trustee.

(3) Nor that Jones was not clothed by Erwin's proxy with all of the latter's powers of action as a common stock voting trustee.

(4) Nor that either McMahon or Jones, in their respective capacities as trustee, is not now acting or would not act with independent judgment, or that either would not justify his selection to his position by independent and unbiased representation of the

trust reposed in him, uncontrolled by the desires of others.

These omissions severally and collectively involve the vitals of the claim of fraudulently invoked jurisdiction, as the authorities differentiate between a mere collusively established jurisdiction and one tainted with fraud.

The federal adjudications holding actions to be collusive in the sense of fraud divide into six general categories, in none of which can be placed the instant matter as we are at present advised:

(1) Where the plaintiff was transferee of claims taken over for collection from citizens of the same state as the defendant. Williams v. Nottawa, 104 U. S. 209, 26 L. Ed. 719; Farmington v. Pillsbury, 114 U. S. 138, 5 S. Ct. 807, 29 L. Ed. 114; Lake County v. Dudley, 173 U. S. 243, 19 S. Ct. 398, 43 L. Ed. 684.

(2) Where plaintiff was transferee of claims taken for collection from citizens of states other than that of defendant, which claims were, separately, of amounts too small to have been sued on in a federal court. Waite v. Santa Cruz, 184 U. S. 303, 22 S. Ct. 327, 46 L. Ed. 552; Lake County v. Dudley, supra.

(3) Where plaintiff removed from the state wherein he and defendant were citizens, with no purpose to acquire permanent domicile, but solely to establish colorable federal jurisdiction. Morris v. Gilmer, 129 U. S. 315, 9 S. Ct. 289, 32 L. Ed. 690.

(4) Where stockholders of a corporation in one state organized a corporation in another, conveying thereto all of the property of the former to the latter, but not dissolving the old corporation, all for the sole purpose of presenting a color of jurisdiction in the federal court. Lehigh Mining & Mfg. Co. v. Kelly, 160 U. S. 327, 16 S. Ct. 307, 40 L. Ed. 444; Miller & Lux v. East Side Canal & Irrigation Co., 211 U. S. 293, 29 S. Ct. 111, 53 L. Ed. 189; Southern Realty Co. v. Walker, 211 U. S. 603, 29 S. Ct. 211, 53 L. Ed. 346.

(5) Where the aligning of parties is a mere contrivance to simulate a federal case, the propriety of the alignment having no substantial basis of fact. Detroit v. Dean, 106 U. S. 537, 1 S. Ct. 560, 27 L. Ed. 300; Dawson v. Columbia Trust Co., 197 U. S. 178, 25 S. Ct. 420, 49 L. Ed. 713.

(6) Where the plaintiff is a mere dummy, either by having no actual interest in the subject-matter of the action, or, having a real interest, has surrendered all control of the progress, prosecution, or disposition of the case to others who may have a substantial interest therein, but who were unable to sue in a federal court, and who are, in fact, conducting the case in their sole interest. Cashman v. Amador & Sac. Can. Co., 118 U. S. 58, 6 S. Ct. 926, 30 L. Ed. 72; Kreider v. Cole (C. C. A.) 149 F. 647; Bell & Howell v. Bliss (C. C. A.) 262 F. 131.

We cite only appellate court cases, attempting, in the foregoing, a fair classification upon the controlling elements of fact therein. These were cases of really nominal or sham plaintiffs. We must apply the same principles, of course, to a case where a nominal or sham defendant is brought in for the purpose of creating jurisdiction in the division where the court sits, which is the claim here respecting McMahon or Jones, either or both.

Of the cases which we have cited, the only ones pressed to our attention in argument are Cashman v. Amador & Sac. Can. Co., and Kreider v. Cole. Each of these cases, however, in very important and controlling particulars, should be distinguished on the facts, assuming as we should, considering the state of the motion matter, that the four omissions above noted occur because the facts sustain the positions, severally, of the plaintiff, and McMahon and Jones, as real parties in interest, and not mere controlled figureheads for others.

First, as to the Cashman Case, there the plaintiff who, the Supreme Court said, was but a sham party plaintiff, represented a party who had a cause of action on the lines laid down in the petition against the defendants thereto, but recognizable only in a state court. Here it is that, even if the plaintiff or McMahon or Jones were produced to perform his or her apparent office as a party, that procurement was not by one who had a cause of action in any court. None of the persons, corporations, or associations alleged in the motions to be instigators of this litigation could have maintained an action anywhere on the lines of this complaint against the moving defendants. We say this because of the obvious fact, alluded to elsewhere, that the Goodyear Corporation is mentioned in the petition as one of the parties to the alleged corrupt plan only as the alter ego of Dillon and Sherwin, who are alleged to dominate it and control it. There are no facts averred or vaguely hinted at which tend in the slightest degree to suggest that the corporation, of its own motion and as the result of any corporate plan or move, has any part in fomenting this litigation.

Second, the facts in the Cashman Case, which Chief Justice Waite, in delivering the

opinion, dwelt upon as specially significant, were derived from the terms of a contract executed in duplicate between Cashman and the county of Sacramento, which was the real party at interest, and set forth in express recitals, that the suit was brought for the benefit of the county because it desired the relief sought which it could not obtain in its own name, because it was unable to sue therefor in a federal court; that the plaintiff stipulated and covenanted not to compromise or dismiss or settle the action without the consent of the county, and also that he would allow the county by its counsel to manage and conduct the case in its own behalf to the same extent and in the same manner as if the suit had been commenced by, and was prosecuted in the name of, the county.

In Kreider v. Cole, supra, it appeared that a street railway corporation was defendant to an action pending in the state court of Pennsylvania, brought by a receiver for one of its creditors, in which, after charging improper conduct on the part of the board of directors of the defendant corporation, the appointment of a receiver thereof was asked. Thereupon the counsel for the street railway company caused to be assigned and transferred to an inpecunious stenographer, residing in New Jersey, certain bonds and stock of and in the street railway company of merely nominal value. The transfer was without any consideration, save that the transferee, Cole, should verify a bill for receivership proceedings in the federal court of the Eastern district of Pennsylvania for the appointment of a receiver, to which the street railway company should be defendant, the case thereafter to be controlled and conducted solely by counsel for the defendant company so procuring the nominal plaintiff. On the date of filing in the federal court, service was accepted by the defendant company through counsel purporting to appear for it, who was from the office of counsel who appeared for Cole, the plaintiff. The issue was raised by an application of the plaintiffs in the state court proceeding to intervene, setting forth formally and in detail the fact situation in the manner of an intervening petition. Upon inquiry by the court, the facts were found to exist. A majority of the Circuit Court of Appeals, reversing the District Court, held that the transaction was merely colorable, and consequently that the proceeding was obnoxious to the act of 1875 (section 37 of the Judicial Code), distinguishing the facts from those in Dickerman v. Northern Trust Co., 176 U. S. 181,

20 S. Ct. 311, 44 L. Ed. 423, and South Dakota v. North Carolina, 192 U. S. 286, 24 S. Ct. 269, 48 L. Ed. 448.

The Cashman Case was distinguished by the Supreme Court in Wheeler v. Denver, 229 U. S. 342, 33 S. Ct. 842, 57 L. Ed. 1219. There it appeared definitely that the nonresident plaintiffs were induced to act as such by a resident whose interest in the prospective litigation was in the same class as that of the plaintiffs, but who could sue only in the state court. It further appeared that the plaintiffs were promised immunity from all expense attendant upon the litigation, including court costs and attorneys' fees, and that they would be absolutely protected in every way from any sort of liability. These assurances were in behalf of the utility company which could itself have sued in the state court only. To this extent the facts paralleled, not only those of the Cashman Case, but of the instant case. The Supreme Court, however, held that the situation so developed was not enough to establish a case of fraudulently invoking the court's jurisdiction. Distinguishing the Cashman Case, Mr. Justice McKenna, rendering the decision and commenting upon the Cashman Case, said:

"There was a cause of action in Cashman; there was a disability on the part of the county to sue in the Federal court in its own name. So far there is resemblance to the case at bar, but there are material differences between the agreement in that case and the agreement between the parties in this. The county was to pay the expenses, engage counsel and indemnify Cashman against all charges and expenses, and he stipulated 'not to compromise, dismiss or settle the said suit without the consent of the county of Sacramento, and to allow said county and the attorneys aforesaid in its behalf to manage and conduct the said suit to the same extent and in the same manner as if such suit had been commenced by and was prosecuted in the name of the said county of Sacramento.' It is manifest, as this court said, from the very beginning the suit was in reality the suit of the County, with a party plaintiff 'collusively made' for the purpose of creating a case cognizable 'by the Circuit Court of the United States.' In other words, as was said, the 'dispute and controversy' which was 'involved' was nominally between Cashman, an alien, and the defendants, citizens of California, but was 'really and substantially' between one of the counties of California and citizens of that state, and thus not 'properly within the jurisdiction' of the circuit court."

In Kreider v. Cole, the distinction be-

tween the admitted facts, and those of the matter before us, considering the omissions of important allegations in the motions, lies in the showing that Cole, the plaintiff therein, had through the holdings which gave him a color of interest, no actual interest whatever because of their lack of value; for that, should the litigation, which he attempted to start, have proceeded as prayed for, and an administration by a receiver of the defendant company's affairs be had, no return could possibly come to him. Because of this the Circuit Court of Appeals distinguished Dickerman v. Northern Trust Co. and South Dakota v. North Carolina, supra.

In our opinion the subsequent decision of Wheeler v. Denver, supra, being in series with the decisions just cited, disposes of Kreider v. Cole, supra, of whatever authority it may superficially seem to have respecting the matters before us as exhibited in the motions. We have already noted, treating of the Cashman Case, the importance of the fact peculiar to this case, that the alleged fomentors of the instant litigation were not themselves qualified to sue in any court upon the lines of the bill before us. In Wheeler v. Denver, the water company, in whose interest Wheeler and Lusk were said to have been procured as parties plaintiff, itself could have sued in a state court as a resident taxpayer.

It is important to note the facts in Dickerman v. Northern Trust Co., supra. There the action was brought by trustees under mortgage bonds, by the terms whereof, among other things, it was provided (page 182 [20 S. Ct. 311]) that " '* * * if a distress, attachment, garnishment, or execution be respectively levied or sued out against any of the chattels or property of either company, and such company shall not forthwith upon such distress, attachment, garnishment or execution being levied or sued out, remove, discharge or pay such distress, attachment, garnishment or execution,' " the mortgage or deed of trust should become enforcible.

One Flanagan had obtained a judgment and execution against one of the companies before a justice of the peace, which judgment the company failed to discharge or pay; whereupon, by the terms underlying the securities, the mortgage became absolute. It was charged (page 185 [20 S. Ct. 312]) that this action before the justice "was a fraudulent and collusive act on the part of the managers of the defendant company, in order to give the trustees the right to begin this foreclosure proceeding; that in pursuance of this the directors had fraudulently

neglected and refused to pay six interest coupons on the bonds owned by Flanagan, in order that a suit might be instituted thereon; that the defendant corporation appeared upon the return of the summons, consented to an immediate trial, made no defense, but allowed judgment to be entered and an execution to issue on the same day, and that the firm of lawyers who had devised this proceeding acted as solicitors for the trustees in filing the bill of foreclosure. It was denied that the Straw Paper Company was insolvent, and it was averred that the complainants and others had combined to wreck the company and defraud the defendant stockholders by withdrawing from the treasury of the company bonds and stock to the value of $3,000,000, which the complainants held in trust for the company, and that the same are assets and not liabilities, as in the bill of complaint alleged." Speaking of this situation respecting the judgment obtained by Flanagan, Mr. Justice Brown, for the Supreme Court, said:

"We have no doubt that this judgment was collusive in the sense that it was obtained by the plaintiff and consented to by the defendant company for the purpose of giving the trustees a legal excuse for declaring the principal and interest of the mortgage to be due, and to give authority for a foreclosure. But this did not constitute collusion in the sense of the law, nor does it meet the exigencies of the petitioners' case. Collusion is defined by Bouvier as 'an agreement between two or more persons to defraud a person of his rights by the forms of law, or, to obtain an object forbidden by law,' and in similar terms by other legal dictionarians. It implies the existence of fraud of some kind, the employment of fraudulent means, or lawful means for the accomplishment of an unlawful purpose; but if the action be founded upon a just judgment, and be conducted according to the forms of law and with a due regard to the rights of parties, it is no defense that the plaintiff may have had some ulterior object in view beyond the recovery of a judgment, so long as such object was not an unlawful one. * * *

"If the law concerned itself with the motives of parties, new complications would be introduced into suits which might seriously obscure their real merits. If the debt secured by a mortgage be justly due, it is no defense to a foreclosure that the mortgagee was animated by hostility or other bad motive."

The case of Wheeler v. Denver not only disposes of the influence, here, of the Cashman and Kreider v. Cole Cases, but is au-

thority for the proposition that, if the plaintiff has in her own substantial right a cause of action and prosecutes the same in her independent right, not surrendering, as Cashman and Cole each did, her right to control its disposition in any way to dismiss, settle, adjust, compromise, or otherwise, the fact that even a resident competent to sue in the local jurisdiction, but not in the federal court, as was the case in Wheeler v. Denver respecting the Denver Union Water Company for whom these offers of reimbursement for costs and expenses were made, procures the action to be brought by her, such procurement does not bring about a case of collusive jurisdiction fraudulently produced.

Considering the case of Wheeler v. Denver in connection with those of Dickerman v. Northern Securities Co. and State of South Dakota v. State of North Carolina, we find authority for holding that the averments attempted in the motion regarded in the light of the facts essential to the establishment of a fraudulent collusive jurisdiction which are omitted therefrom, as above noted, are deficient in necessary averment, and that they are not well taken. In the case between the states, above cited, it appeared that, for the express purpose of establishing original jurisdiction in the Supreme Court, into which the alleged fomentors could not possibly enter, a donation of bonds was made to the state of South Dakota. There was no pretense that this donation was for any other purpose than to establish a jurisdiction in that high court, and it was also apparent that the donors and their friends had an ulterior purpose, looking to their personal benefit; nevertheless jurisdiction was adjudged to have been properly acquired. In Lehigh Mining Co. v. Kelly, 160 U. S. 327, 16 S. Ct. 307, 40 L. Ed. 444, Justice Harlan stated the law upholding jurisdiction where the plaintiff acquired the right and sued in the manner which only, from the allegations of the motion herein, we understand the plaintiff herein acquired her right of action, saying, in an opinion finding that fraudulent collusiveness did indeed exist:

"None of these cases sustain the contention of the plaintiffs. All of them concur in holding that the privilege of a grantee or purchaser of property, being a citizen of one of the states, to invoke the jurisdiction of a Circuit Court of the United States for the protection of his rights as against a citizen of another state—the value of the matter in dispute being sufficient for the purpose— cannot be affected or impaired *merely* because of the motive that induced his grantor to convey, or his vendee to sell and deliver, the property, provided such conveyance or such sale and delivery was a real transaction by which the title passed without the grantor or vendor reserving *or having* any right *or power* to compel or require a reconveyance or return to him of the property in question. We adhere to that doctrine."

While not cited in argument, we perhaps should not overlook Little v. Giles, 118 U. S. 596, 7 S. Ct. 32, 30 L. Ed. 269, to note, as we did considering the Cashman Case from the same volume, how distinct the facts passed upon are from the facts which we are permitted to consider here. It is unnecessary to burden this memorandum with an analysis of the complicated state of facts. They are recited in the opinion, pages 605 and 606, 118 U. S. 596, 7 S. Ct. 32, 30 L. Ed. 269.

Kreider v. Cole, supra, was decided, by divided court, in an attempt, to which we have already alluded, to distinguish the two cases in the Supreme Court referred to (176 U. S. and 192 U. S.). Considering also Wheeler v. Denver, supra, the dissent of Judge Buffington becomes noteworthy.

What we are concerned with here is whether, now and upon the present substantial interests of the parties as aligned in the bill, there is a real controversy within the cognizance of this court. It does not concern us how plaintiff acquired her stock interest, provided she now holds a real interest; nor as to what immunity from litigation expense and responsibility she enjoys, provided she has not surrendered her independence of control of the litigation as plaintiff; nor that any party defendant sympathizes with her purposes in bringing the action, provided such friendly defendant is alignable in the case only on the defense; nor as to how any defendant acquired his position in the case, even if by substitution for another in order to establish federal jurisdiction which, but for the substitution, would not exist, provided such change be actual and such defendant now holds his case in his independent and uncontrolled interest, as personal or in trust; nor that plottings, plannings and manipulations, of whatever sort or by whom engaged in, preceded and brought about the present party interests, provided such are respectively real, now, and are not tainted by fraud in their establishment; nor that third parties, for whatever reason, good or malevolent or self-serving, interested themselves in assisting to establish a controversy of federal cognizance, provided such a controversy now actually ex-

ists, to which the assigned and apparent parties, as such, respectively, are real and self-controlled in fact. These conclusions summarize the effect of a long line of decisions, some already discussed, which note the differentiation between nonsustainable jurisdiction because fraudulently invoked through the creation of merely sham interests, and jurisdiction created by collusion, in fact, but free from actual fraud.

Aside from those already discussed (Dickerman v. Northern Trust Co.; South Dakota v. North Carolina, and Wheeler v. Denver, supra), a large line of cases support our conclusions. Three decisions by our own Court of Appeals are worthy of note. In Toledo v. Toledo Rys. & Light, 259 F. 450, 456, the court held that, whereas a plaintiff has, in a qualified case, a constitutional right to seek a federal court for no other purpose than to keep the issue out of a state court, "it is wholly immaterial whether the defendant, in acquiescing in the plans for a federal forum, is inspired by the same motives," and that, "where the plaintiff's right to choose that forum is absolute and defendant's opposition cannot impair it, no more can defendant's consent do any harm."

In Quinlivan v. Dail-Overland Co., 274 F. 56, 63, the court, reciting that the bill and an answer of one defendant were indorsed by the same solicitors, and that the respective answers and cross-bills of two other defendant corporations were verified by a vice president common to both, and were indorsed by the same solicitors, and that the bill and several answers and cross-petitions were filed in rapid succession (within a period of seven days), held that, while from such circumstances collusion "might be surmised, they are not such as to establish it."

In Black & White T. & T. Co. v. Brown & Yellow T. & T. Co., 15 F.(2d) 509, in a case where a corporation under the laws of Kentucky, finding itself, because of inhibitions of the laws of that state, unable to maintain a monopoly under a contract with a railroad company and to proceed against its competitor, dissolved for the purpose of reincorporating under the law of Tennessee that it might proceed in a federal court, the court, speaking of section 37, Judicial Code, said (page 511):

"The motives which induced the plaintiff company to incorporate under the Tennessee statute can have no influence on its validity. Upon the subject of collusion generally the rule is well settled that where, as here, the proposed suit involves a substantial controversy, the fact that plaintiff and the railway company preferred that litigation be had in the federal courts, instead of in the courts of the state, is not wrongful. 'So long as no improper act was done by which the jurisdiction of the federal court attached, the motive for bringing the suit there is unimportant.' In re Metropolitan Ry. Receivership, 208 U. S. 90, 111, 28 S. Ct. 219, 225 (52 L. Ed. 403). * * *

"The ultimately decisive question is merely whether the Tennessee incorporation is real or fictitious, having in mind that the incorporation is none the less real because of the motive which occasioned it."

The outstanding case on the disregard of motive in seeking federal jurisdiction is In re Metropolitan Ry. Receivership, 208 U. S. 90, 28 S. Ct. 219, 52 L. Ed. 403. There the defendant corporation not only admitted the plaintiff's case, but joined in the request for receivership. Many additional citations may be had which assist to show the insufficiency to establish fraudulent collusion of fact averments before us. Citing only appellate court decisions, we may note Blair v. Chicago, 201 U. S. 400, 26 S. Ct. 427, 50 L. Ed. 801; Chicago v. Mills, 204 U. S. 321, 27 S. Ct. 286, 51 L. Ed. 504; New Albany Waterworks v. Louisville Banking Co. (C. C. A.) 122 F. 776; Consumers' Gas Trust Co. v. Quinby (C. C. A.) 137 F. 882; O'Neil v. Wolcott (C. C. A.) 174 F. 527, 27 L. R. A. (N. S.) 200; and Hutchinson Box Board & Paper Co. v. Van Horn (C. C. A.) 299 F. 424.

Disregarding their vague discursiveness and absence of averment of information of definite subsidiary facts upon which charge of collusion may be founded, accepting, as valid, implications from the mere beliefs of counsel and movants, as such beliefs have been orally and in writing expressed to the court with a paucity of fact statement, still there is not enough in the aggregate to excite the court to a sua sponte investigation, much less to disclose that it has a discretion to bring into the case, at this juncture, testimony, oral or by deposition, at the manifest great inconvenience of witnesses whose several testimonial capacities are yet uncertainly shown, and who, clearly, are to be subjected to a broad inquisition into their private affairs, rather than to interrogation along definite lines upon a definite issue. The cases cited and discussed clearly denote that so to do would be an abuse of discretion and an unwarranted invasion of privacy. To recapitulate:

[8] (1) Plaintiff's standing to sue is not affected by the manner of acquiring the interest sued on, if the latter thereby became ab-

solute, although acquired for the express purpose of qualifying a federal action. South Dakota v. North Carolina; Black & White T. & T. Co. v. Brown & Yellow T. & T. Co., supra.

(2) Not even if such justiciable interest was granted without consideration by third persons, unable to sue themselves, but who hoped for some profit to them to flow from the proposed action. South Dakota v. North Carolina, supra.

[9] (3) Community of interest in the outcome of the litigation between plaintiff and certain defendants who are necessary to the jurisdiction is not suggestive of collusion in the sense of fraud. In re Metropolitan Receivership; Toledo v. Toledo Rys. & Light Co., supra.

(4) So, even if expenses of suit are contributed by defendants, who themselves were unable to sue in federal court. Wheeler v. Denver; Consumers' Gas Co. v. Quinby; Hutchinson B. B. & Paper Co. v. Van Horn, supra.

(5) Nor even that there is a community of professional representation between plaintiff and cross-petitioning or answering defendants. Quinlivan v. Dail-Overland Co., supra.

[10] (6) Collusion in the sense of fraud does not necessarily exist even if the plaintiff's justiciable interest was manipulated into existence and action thereon incited by a defendant or parties interested in plaintiff's success, provided the right to sue actually existed at the time of suit. Dickerman v. Northern Trust Co.; Toledo v. Toledo Rys. & Light Co., supra.

(7) Nor even if action was arranged by parties between whom a justiciable controversy existed. In re Metropolitan Receivership, supra.

[11] (8) Joinder in representation of justiciable facts, even to concurrence in the relief based thereon, is not suggestive of collusion in sense of fraud. In re Metropolitan Receivership, supra.

Under the most favorable light, it is only situations, some or even most of them analogous to those depicted above, which are here presented to the court as affecting the bona fides of this suit in a jurisdictional sense. They do not reach the real question, i. e., Is there here a real action, with real independent and justiciably antagonistic parties, properly aligned?

Even entry of appearance by the moving defendants to this cause, without any objection, would not defeat the court's right to inquire into the question of its jurisdiction; wherefore, in the event that, during the ordinary procedure of this action, facts should appear which indicate that our jurisdiction has been wrongfully invoked, we may and should consider the matter and dismiss this case therefor. Nothing in our present position can be construed to the prejudice of exercise of such duty by the court, nor to the right of the moving defendants to bring the question again to the court's attention.

In passing upon the original motions we said orally, in language applicable here:

"Now, it is said in argument that this is not important. At least, I gather that from the argument yesterday—that the plaintiff is interested in having this matter settled at this time; that the court is interested in having this matter settled at this time—of course we are interested. It would be most reprehensible, and it would be denounced by this court, if it should turn out that this were a collusive suit. We would not entertain it for a minute. But, if the plaintiff has any rights at all in this case, if the bill sets up any interest in her to begin this action, she is entitled at the threshold to know the grounds of this attack and to have them set out in such way in a statement of fact as that she can prepare herself to defend against them, if she seeks to, that she may prepare herself to save the court and herself expense and time by making such concessions as appeal to her sense of right or may be subjects of her personal knowledge or that of her counsel and to save the record. She is entitled to every sort of protection by way of pleading as she would have been entitled to had there been a direct suit against her charging such things."

We were informed by counsel for moving defendants that, in case these motions were denied, it was desired to move for an order permitting the taking of depositions, and a motion or motions to that effect were deposited with the clerk to be filed in the event it was the judgment of counsel that such action is necessary. We have not examined these papers, but, having reached such a determination of the present motions which might, in the opinion of defendants' counsel, require such filing, we are permitting that now to be done. The moving defendants may appear before the court on the 10th day of January to present the motions respecting the taking of depositions, if it is decided to file them. The amended motions are severally denied.